KARL NATHAN, Appellant, *v.* THE EQUITABLE TRUST COMPANY OF NEW YORK, Defendant, and SIDNEY S. PRINCE et al., Copartners under the Firm Name of ASIEL & Co., Respondents.

251

(Submitted January 9, 1929; decided February 13, 1929.)

*Borris M. Komar* and *David L. Sprung* for appellant. The prevailing opinion below erred in failing to recognize the universal rule that the disability created by war always interrupted the running of the Statute of Limitations. (*Bailey* v. *Jackson*, 16 Johns. 210; *Perkins* v. *Rogers*, 35 Ind. 157; *Wall* v. *Robson*, 2 Nott & McC. [S. C.] 498; *Platz* v. *International Smelting Co.*, 61 Utah, 342; *Hanger* v. *Abbott*, 73 U. S. 532; *Farenholtz* v. *Meinshausen*, 181 App. Div. 474; *Jackson* v. *DeLancey*, 11 Johns. 365; *Bonneau* v. *Dinsmore*, 23 How. Pr. 397; *Lightfoot* v. *Davis*, 198 N. Y. 261; *House* v. *Carr*, 185 N. Y. 453; *Hulbert* v. *Clark*, 128 N. Y. 295; *Brown* v. *Hiatts*, 82 U. S. 177.)

*Jonas J. Shapiro* and *Edward S. Greenbaum* for respondents. Section 28 of the Civil Practice Act limits section 27 and the existence of a state of war did not toll the Statute of Limitations. (*Hamilton* v. *Royal Ins. Co.*, 156 N. Y. 327; *Matter of Steinway*, 159 N. Y. 250; *Doe ex dem. Durore* v. *Jones*, 4 D. & E. [T. R.] 300; *Scallon* v. *Manhattan Ry. Co.*, 185 N. Y. 359; *Hall* v. *Wybourn*, 2 Salk. 420; *Prideaux* v. *Webber*, 1 Lev. 31; *Beckford* v. *Wade*, 17 Ves. Jr. 87; *Lee* v. *Rogers*, 1 Lev. 111; *Aubry* v. *Fortescue*, 10 Mod. 205.)

*James M. Lown, Blaine F. Sturgis* and *Joseph S. Catalano* for Hartwell Cabell, *amicus curiœ.* Section 28 of the Civil Practice Act in no way modifies or limits section 27 thereof. (*Hanger* v. *Abbott,* 6 Wall. 532; *Colorado Fuel Co.* v. *Industrial Comm.,* 73 Col. 579; *Robson* v. *Wall,* 10 Am. Dec. 623; *Wall* v. *Robson,* 2 Nott & McC. [S. C.] 498; *United States* v. *Wiley,* 11 Wall. 508; *Braun* v. *Sauerwein,* 77 U. S. 218; *Amy* v. *Watertown,* 130 U. S. 320; *Semmes* v. *Hartford Ins. Co.,* 13 Wall. 158; *Farenholtz* v. *Meinshausen,* 181 App. Div. 474; *Matter of Steinway,* 159 N. Y. 250.)

*William C. Cannon* and *David E. Hudson* for Guaranty Trust Company of New York, *amicus curiœ.* The operation of the Statute of Limitations was not suspended by the existence of a state of war between the United States and Germany. (*Matter of Steinway,* 159 N. Y. 250; *Doe* v. *Jones,* 4 D. & E. [T. R.] 300; *Scallon* v. *Manhattan Ry. Co.,* 185 N. Y. 359; *Aachen & Munich Fire Ins. Co.* v. *Guaranty Trust Co.,* 24 Fed. Rep. [2d] 463.)

O'BRIEN, J. Plaintiff's assignors were German subjects residing at Berlin and on March 17 and March 19, 1917, two causes of action, governed by a six-year Statute of Limitations, accrued in their favor against defendants. On April 7, 1917, the existence of a state of war between the United States and the Imperial German Government was declared by Congress and that status continued until June 2, 1921, when peace was formally proclaimed. The statutory time within which suit could have been brought did not expire until nearly two years after the close of the war, but this action was not begun until January 7, 1927. Does section 27 of the Civil Practice Act now allow the enforcement of a remedy, or is that section modified by section 28? The two sections are cast in these words: " § 27. Effect of war on right of alien. Where a person is disabled to sue in the courts of the

State by reason of either party being an alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited for the commencement of the action.

" § 28. Disability must exist when right accrues. A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued."

No question is before us except one of legislative intent. No other substantial issue was argued in the courts below or decided by them. Constitutional questions cannot for the first time be raised in this court. (*Dodge* v. *Cornelius*, 168 N. Y. 242.) Whether sections 27 and 28 could have valid relation to a suitor who might have been deprived of reasonable time within which to press his remedy is not here. On the question of intent, many decisions cited by appellant have been examined. None appears to constitute controlling precedent. *Hanger* v. *Abbott* (6 Wall. [U. S.] 532) was decided on grounds of public and international law and without reference to any statute similar to section 27 of our Civil Practice Act. *The Protector* (9 Wall. [U. S.] 687, 690) and *Levy* v. *Stewart* (11 Wall. [U. S.] 244) reiterated the common-law rule which had been applied in *Hanger* v. *Abbott*. The Supreme Court in *Bauserman* v. *Blunt* (147 U. S. 647, 654) interpreted its decisions in those earlier cases not as involving the construction of the terms of a Statute of Limitations but as implying an exception by reason of the effect of a state of war, and it described those decisions as dealing with that question as one of public and international law. Here we are concerned with extracting intent from the express terms of our statute. *Cohen* v. *N. Y. Mutual Life Ins. Co.* (50 N. Y. 610) and *Sands* v. *N. Y. Life Ins. Co.* (50 N. Y. 626) are not in point. Decided in 1872 and dealing with events which occurred during the Civil War no mention is made of any statute similar to the present sections 27 and 28. The provisions of these sections would not, however, prevent enforcement of

rights by either of those plaintiffs, one of whom resided in Georgia and the other in Alabama, because no cause of action had accrued in behalf of either until after the Southern States had become belligerents. So the intent of sections 27 and 28 must be inferred from their language read in the light of their historical development.

These enactments read by themselves, without reference to their history, warrant only one deduction. On their face they cannot justify different inferences. They compel the conclusion that the pendency of a state of war constitutes a disability to suitors who are citizens or subjects of the hostile powers and that advantage of such disability is not available to either party unless it existed when the cause of action arose. The power of unambiguous language is exhausted in the phrasing of these two sections. Juxtaposition is not necessarily controlling, but location, considered in relation to the use of the words " disabled " and " disability " in both sections, supplies an additionally clear guide to interpretation. Unless plain language be disregarded, section 28 must be held to apply to every disability defined in the Civil Practice Act and necessarily includes the one resulting from a state of war as plainly as those arising from infancy, insanity or imprisonment as provided by sections 43 and 60. Appellants reject this interpretation and contend that, historically, the use of the word " disability " would indicate that such use was made rather for the sake of rhetoric than for statutory intention or purpose and that a disability caused by the existence of a state of war must be treated in a manner similar to a suspended right to sue caused by an injunction as provided in section 24 of the Civil Practice Act. This contention, according to our view, is refuted by the circumstances under which sections 27 and 28 were introduced into statutory form.

Before the adoption of the Revised Statutes, certain principles had been announced in three cases which are

cited by the parties to this appeal. In *Clarke* v. *Morey*
(10 Johns. 69, 74), decided in the year 1813 while war
existed, the actual point is no broader than a judgment
to the effect that an alien enemy residing in this State
whose action was begun before the declaration of war
was not foreclosed by rules of the common law from
maintaining his action during the war. Chief Justice
KENT expressly limited the scope of the decision when
he stated: " The case before us does not raise the question,
nor do we give any opinion in favor of the right of action
by aliens who resided in the enemy's country when war
was declared, and when the action was commenced. The
cases appear to be against such right. But as to aliens
who were residents with us when the war broke out,
or who have since come to reside here, by a presumed
permission, the authorities seem to be decisive." In
*Jackson* v. *Pierce* (10 Johns. 414, 417), also decided in
1813, the court deducted the eight years' duration of the
Revolutionary War in estimating the time within which
payment of a mortgage would be presumed, but it observed
that " the 20 years is only a circumstance on which to
found the presumption, and is not, in itself, a legal
bar." In *Bailey* v. *Jackson* (16 Johns. 210), decided in
1819, the litigation arose out of a lease of real estate,
situated in England. When the lease was made in 1792
both parties resided in England and, for all the record
shows, both were British subjects. Defendant removed
to this State in 1794 or 1795. The issue was whether
by the lapse of time a presumption of payment of rent
arose. The court deducted the duration of the War of
1812 for the reason as stated by Chief Justice SPENCER
that " the plaintiff was *disabled* to sue during the war.
This is not like a statute bar, which, having once begun
to run, will continue, notwithstanding a subsequent *dis-
ability* occurs." At the time of the rendition of these
decisions, no statute existed in this State respecting a
right as between citizens and alien enemies to enforce

remedies in regard to causes of action which may have accrued either prior or subsequent to a state of war.

The first statutory enactment on the subject is 1 R. S. sec. 32, art. 4, chap. 4, title 2, part 3 (1st ed. page 298) which provides: " § 32. Whenever any person shall be disabled to prosecute in the courts of this State, by reason of his being an alien subject or citizen, of any country at war with the United States, the time of the continuance of such war, shall not have been deemed any part of the respective periods limited in the first and second Articles of this Title, for the making of any entry, or the commencement of any action." The first article of this title creates limitations of time in respect to actions relating to real property. The second article of the same title deals with limitations respecting actions for the recovery of any debt or demand or for damages only. The third article of this title, relating to time limitations governing actions for penalties and forfeitures which might be maintained by an individual against another individual, is not included within the protection of section 32. The codifiers of the Revised Statutes referred to *Jackson* v. *Pierce* and *Bailey* v. *Jackson* in their report made to the Legislature January 2, 1828 (Vol. 4, ch. 4, tit. 2, art. 4, § 35, footnote) in respect to chapter 4, title 2, article 4, and stated: " As an alien enemy cannot sue during war, it seems unjust to deprive him of all remedy, for not doing what our laws forbid him to do. In 10 J. R. 417, and 16 do 210, the supreme court considered war, in such a case, sufficient to repel the legal presumption of payment. The reason seems equally applicable to the statute of limitations." The common-law disability which Chief Justice Spencer described in *Bailey* v. *Jackson* was thus converted into a *statutory disability*. The length of time which at common law was taken into consideration in arriving at a presumption is not governed by rules controlling a Statute of Limitations. When the statute once begins to run, it continues to run, notwithstanding any subse-

quent disability. (*Peck* v. *Randall*, 1 Johns. 165, 176; *Doe* v. *Jones*, 4 T. R. 300, 310.) This rule is expressed in section 41 of the same chapter of the Revised Statutes in which section 32 appears. The rigor of the ancient law which sanctioned confiscation of an alien enemy's property was intended to be relaxed by sections 32 and 41 to the extent of allowing such an alien whose cause of action arose during the war to sue in our courts after the cessation of hostilities. The use of the word " disabled " in section 32 cannot be considered as rhetorical. Its sense is statutory and it must be viewed as descriptive of a condition of inability to sue. The whole section is clearly indicative of an intention to list a state of war in the category with insanity, imprisonment and infancy. This idea is more plainly displayed when consideration is directed to the effect of section 41 which is included within the same title of the Revised Statutes as section 32. This later section provides: " No person shall avail himself of any disability enumerated *in this Title* unless such disability existed at the time his right of action, or of entry, accrued." When the Revised Statutes coupled section 41 with section 32, the effect was in many instances to prevent the subtraction of the continuance of the war from the time of limitation. If the cause of action accrues during belligerency, the later duration of the war is to be deducted. When the right to sue existed before the war, no more extensive privilege is accorded an alien enemy than an infant, a prisoner or an insane person. Sections 27 and 28 of our Civil Practice Act are lineal descendants of sections 32 and 41 of the Revised Statutes and their effect is identical. The legislative intent in both instances seems clear.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Judgment affirmed.