█ LEONARD GERSHINSKY, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 32632.) — This is an appeal from a judgment of the Court of Claims awarding claimant $8,515.11, including interest, for his wrongful detention in State prison from October 6, 1936 to December 29, 1937. Claimant cross-appeals arguing that he should have been awarded damages for 16 days' detention in 1954, and further that the court should have allowed him $500, attorneys fees for services in obtaining claimant's release

from prison in 1937. On February 13, 1923 claimant was sentenced to a 5-year definite term at Sing Sing Prison on a conviction of burglary in the third degree. On May 15, 1926, claimant was released into the custody of the parole board, having received 1 year, 7 months and 11 days for compensation and commutation (under the old system which treated each separately) from the Governor. On May 3, 1929 he was convicted of robbery, second, and sentenced to a 15-year definite term. One of the exhibits, a letter from the Commissioner of Correction, dated July 12, 1929, informed the warden that claimant had to serve the remainder of 1923 sentence before he could begin to serve the second sentence. No documentary showing was made of any action by the parole board. Claimant in 1936 mandamused the prison board to certify him to the Governor for release because his term, less time off for commutation and compensation, had ended. This came on before Judge ALDRICH who granted the claimant's mandamus (*Matter of Gershinsky* v. *Lawes*, N. Y. L. J., Feb. 13, 1937, p. 767, col. 1, affd. 251 App. Div. 893) stating that the parole board had no right to order the warden to confine the prisoner under the remainder of the term of the first sentence because it had not followed the procedures laid down in the Appellate Division opinion in *People ex rel. Rothermel* v. *Murphy* (245 App. Div. 783). The prison board on October 30, 1937 certified claimant to the Governor for release, and he was released on December 29, 1937. The State contends that the claim is barred by the 2-year Statute of Limitations, on the ground that even though claimant was under a disability by reason of section 510 of the Penal Law, as he was in prison, upon his release his disability ceased, and that the subsequent arrest of claimant in 1938 did not resume the suspension of the Statute of Limitations because disabilities may not be " tacked " together. We agree. Claimant argues that a convict on parole is still under the disability of section 510 of the Penal Law because he is serving his sentence outside prison walls (this, of course, was before the amendment of Penal Law, § 510, by L. 1946, ch. 260 on the recommendation of the Law Revision Commission; see 1946 Report, p. 159, Legis. Doc. 65 F, which provided, *inter alia*, that a parolee might sue on being released upon parole), but claimant was not a parolee in the true sense of the word. He was released by gubernatorial commutation on condition that he report to the parole board. In *White* v. *State of New York* (166 Misc. 481, affd. 260 App. Div. 413, affd. 285 N. Y. 728) it was held that a prisoner whose sentence was commuted by the Governor was not subject to the disability of section 510 of the Penal Law even though as a condition to the commutation he had to report to the parole board and could be reincarcerated because of bad behavior. White was a definite-sentence prisoner whose term had been commuted in the same fashion as Gershinsky's term in 1937. It seems clear then that from December 29, 1937 until his subsequent sentence on November 7, 1938 for another crime claimant was under no disability. This raises the next question: can claimant " tack " his disability prior to December 29, 1937 to his disability subsequent to November 7, 1938 (when he was sentenced) and still sue because he only had less than a year in which he could have brought the claim? Section 28 of the Civil Practice Act generally states the policy of the Legislature regarding disabilities, viz., " Except as provided in section twenty-seven, a person cannot avail himself of a disability unless it existed when his right of action * * * accrued." Section 27 relates to enemy aliens so that section 28 would apply here if it is otherwise applicable to cases governed by the Court of Claims Act. Section 1 of the Civil Practice Act provides that it shall apply " to civil practice in all the courts of record of the state." (See, also, Court of Claims Act, § 9, subd. 9; Davison on Claims Against the State of New York, § 26.01.) If section 28 of the Civil Practice Act applies, it seems obvious that claimant

here has no right to sue the State. Subdivision 5 of section 10 of the Court of Claims Act provides that if a claimant is under a disability he may sue within two years after the disability ceases. Section 28 of the Civil Practice Act essentially defines "disability" as one existing at the time the cause of action accrues. Here claimant had *such* a disability, but it ceased in 1937. According to the clear wording of the statute, claimant was required to sue the State within two years of the end of *that* disability. And, according to the clear wording of section 28 of the Civil Practice Act he could not take advantage of any *other* disability, which is exactly what he is trying to do. Even if section 28 does not apply to subdivision 5 of section 10, it is hard to read subdivision 5 of section 10 without reading in an interpretation similar to section 28. For it obviously refers to a disability existing when the cause of action accrues, and it requires suit within two years of the cessation of *that* disability. In addition to subdivision 5 of section 10, subdivision 3 of section 60 of the Civil Practice Act also deals with disability by reason of imprisonment and explicitly requires that the disability in question be in existence at the time the cause of action accrues. If subdivision 3 of section 60 does not apply to Court of Claims actions, it at least seems a good indication of legislative policy with respect to disabilities tolling the Statute of Limitations. It is noteworthy that the Court of Appeals mentioned section 60 of the Civil Practice Act rather than the tolling provisions of the Court of Claims Act when it was dealing with the disability of a prisoner in *Green* v. *State of New York* (278 N. Y. 15, 19) and that it cited with respect thereto, *Nathan* v. *Equitable Trust Co.* (250 N. Y. 250) which involved a stern application of section 28 of the Civil Practice Act where the disability was not in existence when a cause of action accrued. Whether these sections of the Civil Practice Act apply or not, it may further be generally said that when a Statute of Limitations once begins to run, it will continue unless there is a saving qualification in the statute (54 C. J. S., Limitations of Actions, § 218) and that disabilities, in order to bring a party within the exception of the Statute of Limitations, may not be piled one on another, i.e., once the statute has commenced to run it will continue notwithstanding any subsequent disability, so that where a disability existing at the time of the accrual of the cause of action is removed the statute will then run and will not be suspended by any subsequent intervening disability (54 C. J. S., Limitations of Actions, § 219). In *Nathan* v. *Equitable Trust Co.* (*supra*, pp. 256–257) the court states, in referring to Statutes of Limitations: "When the statute once begins to run, it continues to run, notwithstanding any subsequent disability. (*Peck* v. *Randall*, 1 Johns, 165, 176; *Doe* v. *Jones*, 4 T. R. 300, 310.)" By reason of the foregoing the claim should be dismissed because it is barred by the two-year Statute of Limitations. In view of the above holding we are not discussing at length the other contention of the State, viz., that the State is not compelled to answer in damages because the warden was acting pursuant to the authority of the parole board and under *Nastasi* v. *State of New York* (275 App. Div. 524, affd. 300 N. Y. 473) the State may not be required to respond in damages. The testimony is not clear that the warden was acting under the direction of the parole board, although Judge ALDRICH in his opinion so states and it is claimed that the prisoner admitted that he was told by the parole board that he had to serve out the remainder of his 1923 sentence. While there may be substance to the State's contention in this respect, its consideration is not necessary to the decision in the case. Judgment modified on the law and the facts to disallow damages for detention for the years 1936 and 1937; and as thus modified, affirmed, without costs. Settle order on notice. Bergan, J. P., Gibson, Herlihy and Reynolds, JJ., concur.