Thomas KAISER, Plaintiff-Appellant,

v.

William CAHN, Defendant-Appellee.

No. 397, Docket 73–2862.

United States Court of Appeals,
Second Circuit.

Argued Nov. 11, 1974.

Decided Dec. 19, 1974.

Thomas Kaiser, pro se.

Ronald J. Morelli, Asst. County Atty., Mineola, N. Y. (John F. O'Shaughnessy,

County Atty., Nassau County, Natale C. Tedone, Louis Schultz, Senior Deputy County Attys., Mineola, N. Y., of counsel), for defendant-appellee.

Before FRIENDLY, FEINBERG and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Thomas Kaiser, *pro se,* appeals from the grant of summary judgment dismissing his complaint against appellee William Cahn, District Attorney of Nassau County. The action is brought under 42 U.S.C. § 1983, with jurisdiction based upon 28 U.S.C. §§ 1331 and 1343.[1] The Honorable Jacob Mishler, Chief Judge of the United States District Court for the Eastern District of New York, granted summary judgment under Fed.R.Civ.P. 56(b) on the ground that the claim for relief was barred by the statute of limitations, and, more particularly, in spite of certain tolling provisions of the New York Statute of Limitations. We affirm on the basis of a somewhat different analysis.

Kaiser was convicted, sentenced, and imprisoned on July 7, 1966 by the County Court of Nassau County to serve one-and-a-half to seven years on a conviction for the crimes of conspiracy to extort and attempted extortion and coercion. He remained in the County Jail until August 23, 1966 when he was released on bail on a certificate of reasonable doubt.[2] He remained on bail during his direct appeals until July 9, 1969, a period just short of three years. His conviction was ultimately affirmed by the New York courts and the United States Supreme Court. 28 A.D.2d 647, 282 N.Y. S.2d 207 (2d Dept.), aff'd, 21 N.Y.2d 86, 286 N.Y.S.2d 801, 233 N.E.2d 818 (1967), aff'd, 394 U.S. 280, 89 S.Ct. 1044, 22 L.Ed.2d 274 (1969). It was only after the Supreme Court denied rehearing, 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969), that Kaiser reentered prison on July 9, 1969 to complete his sentence.

Kaiser brought this action for $500,000 in compensatory damages and $500,000 in punitive damages against the District Attorney who prosecuted him, on allegations that he was denied a fair trial because of the defendant's malicious pretrial release to the press of evidence to be used at trial with inferences therefrom that Kaiser had underworld connections. This claim of unfair publicity was not pressed on the direct appeal. The claim was made in a collateral attack, however, during Kaiser's imprisonment in a *pro se* petition for a writ of habeas corpus joined with a civil rights complaint filed on September 2, 1970. After that action and another action had been dismissed, appellant filed the present action on October 1, 1971, this time with the aid of assigned counsel.

In the absence of a federal statute of limitations the federal courts borrow the state statute of limitations applicable to the most similar state cause of action. Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); U.A.W. v. Hoosier Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). That is true in federal civil rights actions. Swan v. Board of Education, 319 F.2d 56, 59 (2 Cir. 1963); Ortiz v. LaVallee, 442 F.2d 912 (2 Cir. 1971). We have held, in this Circuit, that the applicable statute of limitations in a federal civil rights case brought in New York is the three years provided by N.Y. C.P.L.R. § 214(2)—liability based on a statute. See Romer v. Leary, 425 F.2d

---

1. § 1983 reads:

*"Civil action for deprivation of rights*
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. The complaint alleges (Par. 8) that appellant was sentenced to prison on August 12, 1966 and imprisoned on that date. The opinion below supports the dates cited in the text.

186 (2 Cir. 1970). Compare the cases in other circuits collected in Reed v. Hutto, 486 F.2d 534, 537 n. 2 (8 Cir. 1973).

■ Although the state statute of limitations most analogous to the civil rights claim is borrowed, the question of when the claim for relief accrued remains a question of federal law. Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947).

■ It could well be argued that the instant claim arose when the District Attorney issued the press releases before trial and that all the claimed damage was foreseeably caused by those acts. Since the gravamen of the claim, however, is the imprisonment itself upon a conviction arising from an allegedly unfair trial, we prefer to treat the subsequent sentence to imprisonment on July 7, 1966 as the cause of the action. Judge Weinstein had so held in a similar case involving pre-trial publicity, as Chief Judge Mishler did here, and we agree. United States ex rel. Sabella v. Newsday, 315 F.Supp. 333, 335 (E.D.N.Y. 1970).³ Since the first complaint filed by appellant was on September 2, 1970, that complaint, as well as the subsequent complaints, was barred on its face by the applicable three-year statute.

■ The claim for relief accrued while appellant was imprisoned, and he is, therefore, entitled to the benefit of the tolling provision of the New York statute. Ortiz v. LaVallee, *supra.*

3. Appellant argues that the claim did not accrue until his conviction was affirmed by the Supreme Court and he was remanded to a state prison. We do not agree. We have recently held, in another context, that a conviction, though the subject of an appeal, is nevertheless a conviction. See Roberson v. Connecticut, 501 F.2d 305 (2 Cir. 1974). There is similarly no policy reason for treating a conviction, subject to review, as a nullity.

4. It is argued that the disability statute speaks of "term of sentence" rather than "imprisonment" and that, therefore, the statute of limitations should be suspended during the whole "term of sentence" rather than the actual imprisonment. Kaiser was sentenced to imprisonment on July 7, 1966. At that time

The tolling provision then applicable to prisoners provided in pertinent part:

"If a person entitled to commence an action is, at the time the cause of action accrues, . . . imprisoned on a criminal charge or conviction for a term less than life, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . .." N.Y.C.P.L.R. § 208.

■ The argument that the tolling provision applies only where New York law prevents an imprisoned felon from bringing suit must be rejected. We held in Ortiz v. LaVallee, that, even though the prisoner was not legally disabled from suing, we would recognize the practical difficulties prisoners face in instituting and prosecuting suits. The District Court's conclusion to the contrary was erroneous. While we did not emphasize in *Ortiz* that the claim involved was civil rights claim, we have since held that even a total incapacity to sue imposed by the state would not bar the assertion of a Section 1983 damage claim in the federal court. Ray v. Fritz, 468 F.2d 586 (1972). See also Almond v. Kent, 459 F.2d 200 (4 Cir. 1972). Such a claim is subject, however, to the state statute of limitations, Swan v. Board of Education, *supra,* and its tolling provisions. Ortiz v. LaVallee, *supra.*⁴

CPLR § 208 was already in effect, having been enacted in 1963. Its tolling provision was applicable to persons "imprisoned on a criminal charge or conviction for a term less than life." The comparable civil disability statute at that time was still the old Penal Law Section 510. It provided that "[a] sentence of imprisonment in a state prison for any term less than for life . . . suspends, during the term of the sentence, all the civil rights . . . of . . . the person sentenced." The disability extended throughout the term of the sentence rather than only during the imprisonment, Lehrman v. State, 176 Misc. 1022, 29 N.Y.S.2d 635 (Ct.Cl.1941); Hayes v. State, 50 N.Y.S.2d 492 (Ct.Cl.1944) except as certain classes of persons under sentence were exempted by

The statute of limitations was tolled when Kaiser entered the Nassau County jail on July 7, 1966. See Ortiz v. LaVallee, *supra.* If he had remained imprisoned without interruption, the tolling period would have continued, and his complaint in September 1970 would have been timely filed. Kaiser did not remain in prison pending his appeal however. He was released on bail on August 23, 1966. If the release terminated the tolling period, only a month and a half—the time he had spent in jail—would be added to the three-year statute by operation of the tolling provisions, and his claim would still be untimely filed. It may be argued, however, that when Kaiser was reimprisoned after losing his appeal, the period of his second incarceration should be tacked on to his earlier tolling period which had suspended the statute of limitations. On this theory the statute would not have barred his complaint until August 23, 1969—three years after his release—and the reimprisonment on July 9, 1969, more than a month before that critical date, would have stopped the running of the statute. Since the complaint was filed while appellant was still imprisoned and the beneficiary of the tolling provision, his complaint would be timely.

The New York courts have construed the tolling statute as prohibiting the tacking of disabilities. Once the prisoner is released, the benefit of the tolling statute is lost forever. A later incarceration will not retoll the statute. Gershinsky v. New York, 6 A.D.2d 964, 176 N.Y.S.2d 667 (3rd Dept. 1958), aff'd, 6 N.Y.2d 798, 188 N.Y.S.2d 190, 159 N.E.2d 681 (1959); Jordan v. New York, 56 Misc.2d 1032, 290 N.Y.S.2d 621 (Ct.Cl. 1968) (plaintiff free for eight months); Broadus v. New York, 61 Misc.2d 970, 307 N.Y.S.2d 479 (Ct.Cl.1972) (plaintiff free for ten months). And see Bussue v. Lankler, 337 F.Supp. 146 (S.D.N.Y.1972).

The New York authorities, it should be noted however, have dealt only with situations in which the plaintiff had been subsequently incarcerated on a different charge or for a violation of parole. We have found no specific New York authority on whether incarceration on the same charge after release on bail will retoll the statute. But see Bussue v. Lankler, *supra,* 337 F.Supp. at 148–149 and note 4.

Considering the purpose of the tolling provision—to mitigate the difficulties of suit while the plaintiff is a prisoner, Ortiz v. LaVallee, *supra*—freedom from restraint should normally end the tolling period. The reason for freeing the plaintiff has little relevance to the purpose for suspending the statute of limitations. Once the plaintiff is outside the prison walls he may pursue his lawsuit.

Yet we must take into consideration that applying New York doctrine literally might sometimes be unfair. Assume, for example, that the prisoner were on bail for two days and then had his bail revoked. We would have the duty in a civil rights case to find our own interpretation of the state statute under federal common law, since in Civil Rights Act cases, the statute of limitations goes to the remedy and not the creation of the right. See Bomar v. Keyes, 162 F.2d 136, 140–141 (2 Cir. 1947) (L. Hand, J.).

In determining the application of federal common law, we assume that the logic of the New York decisions cited would bar retolling in the case of a release on bail and subsequent reincarceration. The statute would have been tolled only from the July 7, 1966 date

---

amendments in 1946, 1950 and 1953. Assuming that a New York court would have dismissed an action by Kaiser in 1966, such disability would not have prevented his suing in the federal court for violation of Section 1983 rights. Ortiz v. LaVallee, *supra;* Ray v. Fritz, *supra.* In sum, the disability statute will not affect the prisoner's federal rights to sue in a civil rights case, despite the normal determination of capacity to sue by state law.

Fed.R.Civ.P. 17(b). Almond v. Kent, 459 F.2d 200 (4 Cir. 1972). The federal court will look to the state tolling statute on the assumption that whether the prisoner is under a state disability or not, the tolling statute will apply on its terms "*imprisoned* on a criminal charge" (emphasis added) rather than on "the terms of sentence" as used in the disability statute.

when Kaiser was imprisoned after sentence to August 23, 1966 when he was released on bail pending appeal. This period of a month and a half would not be enough to prevent the three-year statute from having run prior to the commencement of this action. In fact, the plaintiff was at liberty from August 23, 1966 to July 9, 1969 when he was imprisoned again after the Supreme Court denied rehearing, as we have seen. This period of freedom from actual imprisonment lasted almost three years.

We may in applying federal law to a claim based on a federal statute prevent a result that would substantially impair a valid federal interest. Thus a borrowed state statute of limitations may be tolled in conformity with federal doctrine where the right is the creature of federal statute, Holmberg v. Ambrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), and in state court actions in admiralty where it is thought that a short state statute of limitations would defeat a coincident federal purpose. Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. See Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2 Cir. 1961) (concealment). Thus, the federal rule in fraud has been applied to a state statute of limitations in bank assessment cases, *Holmberg, supra,* and the federal rule on concealment has been applied to a state statute of limitations in a claim under the Clayton Act (before Congress enacted the federal statute of limitations). *Moviecolor, supra.*

The reach of Holmberg v. Albrecht, *supra,* is not limited to suits in equity but applies to actions at law as well, as was convincingly demonstrated by Judge Friendly in *Moviecolor, supra.* We think that civil rights claimants, as well as seamen are entitled to, in the words of Mr. Justice Black "full benefit of federal law". Garrett v. Moore-McCormack Co., 317 U.S. 239, 243, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

In sum, we do not feel that we are necessarily bound by the state's determination of when its statute of limitations is tolled where the question arises in a civil rights claim in the federal court.

Applying our own standard of whether a statute of limitations unduly impairs the federal interest sought to be enforced, we see no reason to hold on this appeal that the state rule against tacking disabilities should not be applied. Here appellant had almost three years of freedom within which to file and pursue his civil rights claim. It is true that the action might not have been susceptible to final decision on damages until the Supreme Court decided the appeal, but filing the complaint would have served notice on the defendant and enabled discovery and preliminary motions to proceed.

Affirmed.