**John E. WILLIAMS, Plaintiff-Appellant,**

v.

**Joseph A. WALSH, Individually and as Superintendent Bridgeport Police Department, William A. O'Connor, President, Frances E. Fagan, Vice President; Andrew C. Lindmark, Frank Delaquila, Wiley Wheeler, Elmer R. Rinko, Timothy O'Neill, and Anthony Camarda, all Individually and as the members of the Board of Police Commissioners, City of Bridgeport, Roger Lehman, Edwin Mak, Joseph Ciuci, John Bourque, and Jerome Mitchell, members of the Board of Police Commissioners, City of Bridgeport, Defendants-Appellees.**

**No. 200, Docket 76–7263.**

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1976.

Decided June 27, 1977.

David N. Rosen, Rosen, Dolan & Koskoff, New Haven, Conn., for plaintiff-appellant.

L. Scott Melville (Raymond B. Rubens, Bridgeport, Conn., on the brief), for defendants-appellees.

Before LUMBARD, WATERMAN and MULLIGAN, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment order of the United States District Court for the District of Connecticut, Newman, J., dismissing, on the ground that the action was barred by the "borrowed" Connecticut tort statute of limitations, a civil rights action

brought pursuant to 42 U.S.C. § 1983. We affirm the dismissal of the complaint.

In November, 1969, when plaintiff-appellant John Williams was permanently employed as a police officer by the City of Bridgeport, Connecticut, he was charged with improper use of his firearm and with filing a false police report. On December 11, 1969 a hearing was convened by the Board of Police Commissioners to consider these allegations, but plaintiff, choosing to rely on his Fifth Amendment privilege against self-incrimination, refused to answer any questions. After deliberation, the Board found plaintiff guilty as charged and ordered that he be suspended for a short period of time. Plaintiff's refusal to answer questions at the December 11 hearing brought on additional charges that he had violated a departmental regulation which prohibited an officer from engaging in "conduct prejudicial to the good order and police discipline of the Department." On January 13, 1970, a hearing was held to consider these additional charges. As a result of this second hearing plaintiff was permanently discharged from the department.

Within a few days of his discharge, plaintiff filed with the Connecticut Court of Common Pleas an appeal from the decision of the Board of Police Commissioners.[1] Plaintiff also exercised his contractual right to submit his claims against the city to arbitration. After receiving an unfavorable arbitration award, plaintiff appealed the arbitration decision to the Connecticut Superior Court. That court sustained the arbitrator's ruling. Moreover, after languishing for nearly four years, on December 12, 1973 the appeal to the Connecticut Court of Common Pleas was dismissed on jurisdictional grounds.

On March 27, 1974, plaintiff filed the § 1983 action which has produced this appeal. The complaint here alleges that plaintiff's discharge, following his refusal on Fifth Amendment grounds to answer questions propounded to him at the hearing before the Board of Police Commissioners, was accomplished only because some of the defendants[2] violated plaintiff's First Amendment rights to freedom of speech and press, his Fifth Amendment privilege against self-incrimination and his Fourteenth Amendment right to due process of law. Plaintiff further averred that the actions of those who had discharged him in derogation of his constitutional rights were performed in concert, willfully, maliciously and with an intent to deprive plaintiff of those constitutional rights. The injuries inflicted upon plaintiff were alleged to be loss of employment and income, great pain and suffering of mind and great embarrassment and humiliation. The complaint sought both equitable intervention (injunctions ordering reinstatement and forbidding enforcement of a certain departmental regulation) and legal relief (backpay, compensatory damages of $100,000 and punitive damages of $100,000).

On cross-motions for summary judgment, the district court "borrowed" the Connecticut tort statute of limitations, Conn.Gen.

1. Plaintiff seems to have predicated his appeal to the Connecticut Court of Common Pleas principally, and perhaps exclusively, on federal constitutional grounds. The gravamen of Williams' pleading there was that, in discharging him from his position as a police officer, the Board of Police Commissioners violated his right to due process of law and his privilege against self-incrimination. There is probably also an allegation sufficient to raise a claim under state law, namely, that the Board "acted arbitrarily, illegally . . . and unreasonably so as to abuse its discretion."

2. The defendants here include the Superintendent of Police of the City of Bridgeport who was Superintendent both when Williams was discharged and when the complaint here was filed, the eight persons who were members of the Bridgeport Board of Police Commissioners at the time Williams was discharged, and the five persons who had become members of the Board of Police Commissioners by the time the complaint here was filed but who had not been members at the time Williams was discharged. Inasmuch as they did not personally participate in Williams' discharge, the latter five persons are sued only in their official capacities; the other nine, all of whom, according to the complaint, personally participated in depriving Williams of his constitutional rights, are sued both individually and in their official capacities.

Stat. § 52–577, and held that plaintiff's entire action, which had not been commenced within the three years specified in the statute, was time-barred.

On this appeal, plaintiff challenges the district court's use of the Connecticut tort statute of limitations to bar both his equitable and legal prayers for relief. His principal argument is that, even if it be assumed arguendo that the district court properly held his "claim" for damages to be time-barred by the tort statute of limitations, the district court nevertheless erred in also holding as barred the "claim" plaintiff argues was his separate "claim" for reinstatement. Plaintiff next argues that, in any event, the district court should have ruled that the civil rights action here was filed in timely fashion because the Connecticut statute of limitations should have been considered to have been tolled during the pendency of plaintiff's appeal to the Connecticut Court of Common Pleas. We reject both of these contentions.

## I

Many § 1983 cases have recited the well-established rule that "[i]n the absence of a federal statute of limitations federal courts borrow the state statute of limitations applicable to the *most similar state cause of action*." *Kaiser v. Cahn,* 510 F.2d 282, 284 (2d Cir. 1974) (emphasis supplied). Plaintiff does not appear seriously to maintain that the district court here was not justified in selecting the Connecticut tort statute of limitations, Conn.Gen.Stat. § 52–577, as the statute of limitations properly applicable to plaintiff's "legal claim" for damages.[3] Plaintiff argues, however, that his complaint contained not only a single tort claim for damages, but at least two causes of action, and that a different

state time-bar period should have been applied by the district court to each of them. We certainly agree that it is well-settled that a § 1983 complaint may contain more than one cause of action and thus may require the borrowing and the application of more than one state statute of limitations. *See, e.g., Chambers v. Omaha Public School Dist.,* 536 F.2d 222, 227 (8th Cir. 1976); *Polite v. Diehl,* 507 F.2d 119, 122–23 (3d Cir. 1974); *Beard v. Stephens,* 372 F.2d 685, 688–90 (5th Cir. 1967). It is also true that plaintiff's complaint does present more than one cause of action. We do not agree, however, with the plaintiff's argument that the injunctive *relief* he requested—reinstatement—constitutes one of these "causes of action" and that, under Connecticut law, his so-called "reinstatement cause of action" is most analogous to the legal action of mandamus. Continuing with this line of reasoning, plaintiff then points out that in Connecticut a mandamus action is not subject to a statute of limitations but only to the equitable time-bar of laches, and plaintiff urges that his request for reinstatement should be measured here by whether he has been guilty of laches. Plaintiff's reasoning is flawed, for he fails to appreciate the precise meaning of the term "cause of action."

"A 'cause of action' is a situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf." *Rhodes v. Jones,* 351 F.2d 884, 886 (8th Cir. 1965), *cert. denied,* 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966); *accord, Bradford v. Southern R. Co.,* 195 U.S. 243, 248, 25 S.Ct. 55, 49 L.Ed. 178 (1904); *United States v. Smelser,* 87 F.2d 799, 800–01 (5th Cir. 1937). In other words, a cause of action is generally established by showing the existence of a

---

**3.** While there are other Connecticut statutes of limitations that might conceivably have been borrowed (*see, e.g.,* Conn.Gen.Stat. § 52–596, entitled "Actions for payment of remuneration for employment", setting a two-year limit and § 52–584, entitled "Limitation of actions for injury to person or property", setting a one-year limit), they establish shorter periods of limitation than the tort statute, and plaintiff for obvious reasons does not even suggest them to

this court as alternatives to the tort statute of limitations selected by the district court below. Therefore, the district court's choice cannot be considered an unreasonable one, particularly as Connecticut does not have a catch-all statute of limitations for liabilities created by statute of the sort which this court has adopted as the proper statute of limitations for § 1983 cases litigated in New York state. *See Kaiser v. Cahn, supra* at 284–85.

right held by the plaintiff and a breach of that right by the defendant. But, most definitely, "[t]he cause of action is something distinct from the remedy or the relief sought." *Dennison v. Payne,* 293 F. 333, 344 (2d Cir. 1923); *accord, United States v. Smelser, supra* at 800–01.

 Thus, while the five counts of the complaint here obviously do contain a number of different causes of action, based on arguments that plaintiff's discharge violated his First Amendment rights to freedom of speech and press, his Fifth Amendment right against self-incrimination, and his Fourteenth Amendment right to due process of law, the various prayers for relief, including requests for reinstatement and for backpay, compensatory damages and punitive damages, most certainly do not themselves give rise to separate "causes of action." Therefore, the request for reinstatement does not constitute a separate and distinct cause of action but is no more than a prayer for additional relief sought by plaintiff as to each of the causes of action which are predicated on alleged violations of various constitutional rights possessed by the plaintiff.

 Although the independent remedies of a damage award and injunctive relief do not constitute separate "causes of action," it is true that, inasmuch as these disparate remedies would traditionally have been sought in different forms of action, the former in an action at law and the latter in a suit in equity, these remedies have ordinarily been governed by different periods of limitation. The distinction between different causes of action and different remedies is important, however, because, in contrast to the true independence of limitations periods controlling different causes of action, the limitations periods governing two concurrent remedies, one legal and the other equitable, are not independent of one another. Specifically, when, as here, a suit in aid of a federally-created right is brought seeking both legal and equitable relief, "equity will withhold its remedy if the legal right is barred by the local statute of limitations." *Russell v. Todd,* 309 U.S.

280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940); *see Cope v. Anderson,* 331 U.S. 461, 463–64, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); 2 Moore's Federal Practice ¶ 3.07[3], at 762.

That this principle should govern the disposition of the present case is settled by *Swan v. Board of Higher Education,* 319 F.2d 56 (2d Cir. 1963). *Swan* is particularly significant in that from the start of the lawsuit there Swan was *not* seeking any legal relief at all but was requesting only equitable intervention by the federal court. Despite this absence of a request for legal relief, this court, distinguishing *Holmberg v. Armbrecht,* 327 U.S. 392, 395–96, 66 S.Ct. 582, 90 L.Ed. 743 (1946), determined "that since plaintiff *could also have* sought Civil Rights Act relief by way of damages, he is not here asserting 'a federal right for which the sole remedy is in equity.'" 319 F.2d at 59–60 n.5. (Emphasis supplied) The court then ruled that the case was "one of 'concurrent' legal and equitable jurisdiction, in which case the statute of limitations [which would be applicable to bar the legal claim] does apply" to both the legal and equitable requests for relief. 319 F.2d at 60 n.5. *Swan* thus establishes that the multiple causes of action in the present case are time-barred not only as to relief arising from a "legal" jurisdiction but also as to any equitable relief that might otherwise be available to be sought in connection with those causes of action.

An identical result to the one we reach here was reached in *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969). The facts in that case are remarkably similar to those before us now. In *Wood,* a demoted police officer brought a civil rights action alleging that he had been wrongfully demoted in violation of certain of his Fourteenth Amendment rights. As relief, Madison sought both reinstatement to his former position and damages for the loss of wages he had suffered. When, however, the defendants moved to dismiss the complaint as barred by the pertinent statute of limitations, Madison amended his complaint by deleting any request for damages. "The only claims remaining thereafter *were those for equita-*

*ble relief* under Section 1983, *namely, reinstatement,* injunction, and any further [equitable] relief that the Court may deem proper." *Id.* at 565 (emphasis supplied) (footnote omitted). Madison's efforts to salvage his lawsuit were unavailing, however, for the Sixth Circuit, relying upon our own decision in *Swan,* concluded:

> We conclude, moreover, that his claim is outlawed even though he amended his complaint to seek purely equitable relief because 'equity will withhold its relief . . . where the applicable statute of limitations . . . bar[s] the concurrent legal remedy.' True, a remedy at law solely for damages would not have been adequate to restore Appellant to his former position as police sergeant, but the fact that Appellant amended his complaint to seek purely equitable relief does not transform his claim into a purely equitable one allowing him to escape the bar of the statute of limitations. Because of the nature of the alleged wrong done to him, Appellant had a concurrent remedy at law for damages which, because of its inadequacy, entitled him to come into equity for more appropriate relief. Since we hold that Appellant's legal remedy was barred by M.S.A. § 27.-605, any equitable relief he may seek must also be barred.

*Id.* at 567–68 (citations omitted).

The *Swan* approach was also applied to a fact pattern highly similar to the pattern here in *Romer v. Leary,* 425 F.2d 186 (2d Cir. 1970). There, as here, the plaintiff Romer was a police officer who had allegedly been discharged in violation of his constitutional rights. In his complaint, Romer sought, as does Williams here, both "the specific relief of a mandatory injunction to reinstate [him] and a damage award for back pay." *Id.* at 188. Regarding *Swan* as controlling authority, we held there that

the police officer's lawsuit was time-barred as to all relief sought. Significantly, we did not reexamine *Swan's* rejection of laches, *see Swan v. Board of Higher Education, supra* at 59–60 n.5, as the governing time-bar on the equitable remedy when the concurrent legal remedy of damages was barred by the appropriate state statute of limitations.

Plaintiff actually acknowledges the soundness of the doctrine that equity will withhold its relief if the cause of action as to which a legal remedy is sought is barred by the local statute of limitations. He contends, however, that this doctrine has no application here because he prays for job reinstatement, and this remedy, concurrent with his legal remedy of damages, is really a legal, and not an equitable, remedy. Plaintiff reaches this conclusion by arguing that, in an original action in the Connecticut state courts, reinstatement would be sought by way of a mandamus proceeding, a proceeding which, like an Article 78 proceeding in the New York state courts, is considered legal in nature. The difficulty with plaintiff's argument is that, in federal civil rights actions, characterization of the remedy, just as is characterization of the nature of the cause of action, *cf. Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 83 (2d Cir. 1961);[4] *Bertha Building Corp. v. National Theatres Corp.,* 269 F.2d 785, 788 & n.4 (2d Cir. 1959), *cert. denied,* 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960), is a matter of federal, and not of state, law.

This is made clear by *Swan v. Board of Higher Education, supra.* There, we noted that the cause before us could have been brought in an Article 78 proceeding in the New York state courts, a proceeding plaintiff admits is analogous to a Connecticut mandamus action. Yet, in *Swan,* despite the fact that a New York Article 78 proceeding, as is a Connecticut mandamus ac-

---

4. In dealing with federally created claims both federal and state law must sometimes be consulted to determine whether the borrowed period has run. Thus, when a state has established different periods of limitation for different types of action, a federal court enforcing a federally created claim looks first to federal law to determine the nature of the claim and then to state court interpretations of the statutory catalogue to see where the claim fits into the state scheme.

*Moviecolor Ltd. v. Eastman Kodak Co., supra* at 83 (Friendly, J.).

tion, is considered a legal proceeding under state law, we characterized the relief sought in the federal court there, an injunction, as being, for purposes of the pending federal civil rights action, a relief equitable in nature. Moreover, federal courts have typically, without any reference whatsoever to state law, regarded requests for reinstatement made by discharged public employees as being equitable rather than legal in nature. *E. g., Madison v. Wood, supra* at 565 ("The only claims remaining thereafter were those for equitable relief under Section 1983 . . ., namely, reinstatement . . . ."); *Wilkinson v. Hamel*, 381 F.Supp. 768, 769 (W.D.Va.1974) ("plaintiff has requested the equitable relief of reinstatement"); *see Romer v. Leary, supra.*

We therefore hold that as to each of the various constitutional tort causes of action the complaint sets forth, the plaintiff is barred from seeking the equitable remedy of reinstatement because his concurrent legal remedy is barred by the applicable state statute of limitations.

## II

Plaintiff's second contention on appeal is that under either of two theories the district court should have "tolled" the running of the Connecticut statute of limitations, a tolling which the plaintiff argues would have resulted in his civil rights action being timely filed. His first theory of tolling is that the district court should have applied the Connecticut "tolling" statute, Conn.Gen. Stat. § 52–592, in such a way that the state tort statute of limitations would have been considered "tolled" during the entire four-year period plaintiff's appeal from his discharge was languishing in the Connecticut Court of Common Pleas. The state tolling statute provides, as follows:

> If any *action*, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the writ was abated, or has been erased from the docket for want of jurisdiction, or the action has been other-

wise avoided or defeated by the death of a party or for any matter of form; . . . the plaintiff . . . may commence a new action for the same cause at any time within one year after the determination of the original action. . . . (Emphasis supplied.)

As can be seen, this tolling statute is activated only during the pendency of an "action." While plaintiff does not deny that under Connecticut law his appeal to the Court of Common Pleas was not regarded as an "action," see *Carbone v. Zoning Board of Appeals*, 126 Conn. 602, 13 A.2d 462 (1940), he does argue, relying upon *Kaiser v. Cahn, supra*, that the tolling statute should not have been applied by the federal court here as technically as it would have been applied by the Connecticut state courts because such a technical application would be "unfair."

The second theory upon which plaintiff relies is one we considered, but refused to apply, in the recent case of *Meyer v. Frank*, 550 F.2d 726 (2d Cir. 1977). We held there that under the circumstances before us the rule of *Mizell v. North Broward Hospital Dist.*, 427 F.2d 468 (5th Cir. 1970), was inapplicable.[5] The *Mizell* rule is that, as a matter of federal law and without reliance on a specific state tolling statute, a state statute of limitations applicable to a § 1983 civil rights action is tolled while the potential federal civil rights plaintiff is pursuing state law causes of action in the state courts and state administrative agencies. In rejecting the application of this rule in *Meyer*, we reasoned that, although neither the remedial purposes underlying § 1983 nor the policies of federalism were frustrated by strict adherence to the governing statute of limitations there, a decision that the statute of limitations should be tolled would have undermined the traditional policies behind statutes of limitations. Appellant here, seeking to distinguish *Meyer*, urges that the circumstances in his case permit the application of a *Mizell*-type rule.

---

**5.** As in *Meyer*, we intimate no views here on how we would decide a case indistinguishable

from *Mizell. See Meyer v. Frank, supra* at 729 & n.8.

As to plaintiff's first theory of tolling, we hold that the district court here was correct in applying the Connecticut tolling statute consistently with the Connecticut courts' construction of that statute. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–67, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), establishes that once a federal court borrows a state statute of limitations, it *generally* should also borrow the related provisions, pertaining to tolling, revival and so forth, as interpreted under state law, unless such an unmodified borrowing would be inconsistent with a strong federal policy underlying the federal cause of action. As we shall discuss next in connection with our consideration of plaintiff's second theory of tolling, the policy considerations we perceive as being material here do not assist plaintiff's case and we therefore believe that the district court was correct in relying upon the Connecticut courts' interpretation of the Connecticut tolling statute.

Turning now to a consideration of plaintiff's second theory of tolling, we think *Meyer v. Frank, supra*, provides the framework within which plaintiff's argument must be assessed and resolved. As we noted there, "[i]t is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances." 550 F.2d at 729. Despite the fact that the policies impelling the enactment of state statutes of limitations may be frustrated, tolling may sometimes be necessary to prevent frustration of the policy behind the substantive federal statute or, perhaps, to advance the goals of federalism. In *Meyer*, however, we refused to toll because we found that, while the policies underlying statutes of limitations would indeed be frustrated by tolling the statute of limitations there, tolling was not needed to protect the remedial policy underlying the plaintiff's § 1983 claim and would not have furthered the objectives of federalism. The same rationale applies here.

As we stated in *Meyer*, "[t]he remedial policy underlying § 1983, considered alone, would not be impinged upon by [refusing to toll and, instead,] applying the three year limitations period here. Since § 1983 plaintiffs are not required to exhaust state remedies, *Monroe v. Pape* [, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961),] federal relief was available to [Williams] all along." 550 F.2d at 729 (footnote omitted). The three-year period is, moreover, not so short a time that it might conceivably be considered an undue restriction on the exercise of the federal remedy. *See Romer v. Leary, supra* at 187; *Swan v. Board of Higher Education, supra* at 60.

Furthermore, as was true in *Meyer*, tolling here would not in any significant way further the policies of federalism. A healthy federalism demands, of course, that the federal courts avoid as much as is possible intruding upon the domain which is particularly the responsibility of the state courts, namely, the protection of state-created rights. It would appear that the knowledge of a potential federal civil rights plaintiff that, should he initially enter the state courts or state administrative agencies in an attempt to vindicate his state-created rights, the statute of limitations applicable to his federal causes of action will be tolled during the pendency of the state proceedings, would encourage that litigant to utilize initially the state forums only for the vindication of his state-created rights. But the principles of federalism do not require that the federal courts, through their tolling policies, defer to the special competence of the state courts when the plaintiff brings to the state courts not only his state-created causes of action but some or all of his federally created causes of action as well. Here, as in *Meyer*, the § 1983 plaintiff's prior excursion into state court included a presentation of *both* state-created law claims and federal constitutional claims. Indeed, it is not altogether clear that plaintiff presented *any* state-created claims in his appeal to the Court of Common Pleas.[6] The presentation of his federal claims for state court adjudication effectively elimi-

6. *See* note 1 *supra*.

nates one substantial reason, based on the principles of federalism, why tolling might have been justified here. What we said in *Meyer* bears repeating here:

> Meyer invites us to apply *Mizell* here. Assuming arguendo our agreement with the result reached there, the history of the instant litigation forecloses application here of the full force of the Fifth Circuit's reasoning. Meyer did not restrict his Article 78 petition to claims grounded in state law. Alleged violations of his Sixth Amendment rights to counsel and confrontation of witnesses were at the core of his petition. This is not a case like *Mizell* where the prior state court proceeding was directed at obtaining relief through an action grounded solely in state law. . . . The only thing Meyer has held in reserve has been the federal court itself; federal law has played a principal role all along. The result is that the policy of avoiding federal interference with state affairs survives here in a diluted posture.

*Id.* at 729.

Tolling here would also apparently frustrate the policy of repose which underlies statutes of limitations, a policy which, as is noted in *Meyer v. Frank*, is designed to protect defendants against the prosecution of stale claims and to protect the courts from having to decide the merits of such claims when the plaintiff has slept on his rights.

Keeping in mind the "considerable weight *Johnson* places on upholding statute of limitations policy," *Meyer v. Frank, supra* at 730 n.11, citing *Johnson v. Railway Express Agency, Inc., supra*, at 463–67 & 467 n.14, 95 S.Ct. 1716, we conclude that tolling here would, particularly as to the claims for monetary relief, frustrate the first purpose of the policy of repose, that of protecting the defendants here against the

prosecution of stale claims. While it is true, as plaintiff argues, that the claims timely raised in the appeal before the Connecticut Court of Common Pleas were identical, or similar, to those raised in the United States District Court below, we think the two proceedings are dissimilar in two material respects.

First, in the appeal in the Court of Common Pleas, neither the Superintendent of Police nor the individual members of the Board of Police Commissioners were named as defendants, either individually or in their official capacities. Rather, the Board of Police Commissioners, as an entity, was the sole party defendant.[7] *See Williams v. Board of Police Commissioners*, 31 Conn. Sup. 125, 324 A.2d 771 (Ct. of Common Pleas Hartford Cnty. 1973). By virtue of this factor alone, it "apparently may be presumed" here that defendant Police Superintendent Walsh and all of the defendant members of the Board of Police Commissioners were in "an actual state of repose." *Meyer v. Frank, supra* at 730 n.10, relying upon *Johnson v. Railway Express Agency, Inc., supra*, at 467 n.14, 95 S.Ct. 1716. Second, for those eight defendants here who were Board members at the time of Williams' discharge, the fundamental character of the separate proceedings in the state and federal courts is dramatically different. In contrast to the appeal before the Court of Common Pleas, where the persons who were members of the Board of Police Commissioners at the time of Williams' discharge were not named as defendants, had no personal pecuniary stake in the outcome of the litigation and whose only interest, if any, could have been in their official capacities, upon the filing of the § 1983 action here these same individuals suddenly, and without warning, found themselves, more than four years after Williams' discharge, potentially liable in their personal capacities

---

7. There is a definite distinction between suing a board, as an entity, and suing the individual members of that board. *See, e. g., Gay Students Organization v. Bonner*, 509 F.2d 652, 655 (1st Cir. 1974) ("But here the action was brought, not against the University or its Board of Trustees as a body, but against a number of the University's officials [, including] Governor Thomson, an *ex officio* member of the Board; and the other members of the Board, including Dunlop, the Chairman. These persons were originally sued both individually and in their official capacities.")

**676**

for hundreds of thousands of dollars in damages. Under these circumstances, to say that the filing and pendency of the prior appeal in the Court of Common Pleas was sufficient notice to these eight individuals to provide a basis for our disregarding the three-year statute of limitations is to ignore reality.

Moreover, we should note that while some of the causes of action asserted here appear to be identical to those presented in the Court of Common Pleas, there is at least one cause of action, the one based on an alleged violation of plaintiff's First Amendment rights to freedom of speech and press, which was definitely not asserted there, and it may well be that more of the constitutional theory upon which plaintiff relies here was not presented to the Court of Common Pleas. As to theory not previously developed in the Court of Common Pleas, our recent remarks in *Meyer v. Frank, supra* at 730 n.10, strongly suggest that we should *not* toll the statute of limitations here:

> Under *Johnson v. Railway Express Agency, Inc., supra* at 467 n.14, 95 S.Ct. 1716], it may be that the factual question of whether the defendant was in a state of repose need be considered only when, as in *Burnett* [*Burnett v. New York Central R.R.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941], the two causes of action are the same. In other cases, an actual state of repose apparently may be presumed.

Even with regard to that theory which *was* presented both in the district court here and in the pleading in the Court of Common Pleas, we conclude, as discussed, that the prior state court proceeding cannot serve to deprive the defendants here of their justifiable reliance on the policy of repose because none of those defendants were named as defendants in the state court proceeding.

In deciding whether to toll a statute of limitations, it is proper for us to consider the "plaintiff's conduct—particularly his diligence in pressing his claim." *Meyer v. Frank, supra* at 729. While it may be a close question here, it is at least arguable that Williams can be said to have "slept on

his rights." *Id.* at 730. As we have already mentioned, Williams could have filed his § 1983 action at any time after his discharge. In *Johnson*, where the petitioner could also have filed his civil rights action from the time his cause of action accrued, the "petitioner's failure to take the minimal steps necessary to preserve [his civil rights act claim]," *Johnson v. Railway Express Agency, Inc., supra* at 466, 95 S.Ct. at 1723, was considered sufficient grounds for the Supreme Court to conclude that the petitioner had "slept on his § 1981 rights." While *Johnson* does not control on this point, *see Meyer v. Frank, supra* at 730 n.11, *Johnson* is, in view of our finding that the concerns of federalism have become severely diluted here, by no means immaterial to our analysis. It is significant also that the Supreme Court reached its arguably harsh conclusion in *Johnson* in the context of a one-year statute of limitations, a limitation period of substantially shorter duration than the three-year statute applicable here. Moreover, while it is true that the three-year limitation period on this § 1983 claim here had already expired by the time the appeal to the Court of Common Pleas was dismissed, it does not seem unreasonable to say that—even assuming that at the outset Williams may reasonably have wished to hold his federal civil rights act remedy in abeyance pending disposition of the state court appeal—when no action had been taken on that appeal it eventually became incumbent upon Williams to move, at some point prior to the expiration of the three-year limitations period, to protect his federal remedies if he so desired. This he did not do, and, while his actions were certainly less culpable than those of the plaintiff in *Meyer*, we do not believe that plaintiff has exhibited here the diligence which would help persuade us to decide to toll the running of the statute of limitations.

The judgment order of the district court is affirmed.