572 F.2d 1233
 Gloria GREEN, Joe Green and Catherine Nance, Appellants,
v.
William C. TEN EYCK, Individually and as Building
Commissioner, City of Greendale, and James H. Foley, Jr.,
Individually and as Mayor of the City of Greendale, and City
of Greendale, Missouri, Appellees.
Gloria GREEN, Joe Green and Catherine Nance, Appellees,
v.
William C. TEN EYCK, Individually and as Building
Commissioner, City of Greendale, Missouri, James H. Foley,
Jr., Individually and as Mayor of City of Greendale,
Missouri, and City of Greendale, Missouri, Appellants.
 Nos. 77-1476 and 77-1477.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1977.
Decided March 7, 1978.
Rehearing and Rehearing En Banc Denied April 27, 1978.
 
 Francis H. Kennedy, Jr. (argued), Chopin & Kennedy, St. Louis, Mo., on brief, for appellant Green.
 Roy W. Bergmann, St. Louis, Mo. and Fred Boeckmann, Clayton, Mo., argued and on brief, for appellees.
 Before GIBSON, Chief Judge, HEANEY, Circuit Judge, and HUNTER, District Judge.*
 HEANEY, Circuit Judge.
 
 
 1
 These consolidated appeals arise out of an action filed by Gloria N. Green, Joe Green and Catherine Nance against the City of Greendale, Missouri, its building commissioner, William C. Ten Eyck, and its mayor, James H. Foley, Jr. The plaintiffs alleged that they were denied an occupancy permit on the basis of their race in violation of their right to equal treatment with respect to housing guaranteed by the Constitutions of the United States and the State of Missouri, Title VIII (Fair Housing) of the Civil Rights Act of 1968,[1] 42 U.S.C. § 3601 et seq., and the Civil Rights Acts of 1866, 1870 and 1871, 42 U.S.C. §§ 1981, 1982 and 1983.[2] The plaintiffs appeal from the trial court's dismissal of their action for failure to comply with the appropriate statutes of limitations. They also request an award of attorney's fees on appeal. The defendants appeal from the trial court's denial of their motion for attorney's fees as the prevailing party. We affirm in part and reverse in part.
 
 
 2
 Greendale is a municipal corporation located in St. Louis County, Missouri. About ten percent of Greendale's population of 972 is black. Before any individual can occupy a dwelling unit in Greendale, he is required by Ordinance No. 182 to obtain an occupancy permit from the building commissioner. Violations of the ordinance are punishable by a fine of up to $300 each day the violation continues after notice of the violation has been given.
 
 
 3
 The Greens entered into a contract to purchase a home in Greendale. On May 7, 1976, Gloria Green submitted an application for a residential occupancy permit in compliance with Ordinance No. 182. The application was filed on behalf of seven Greens (husband, wife and five children) and two Nances (the mother and brother of Gloria Green). The Greens and the Nances are black. On May 9, 1976, the application was rejected by the building commissioner, William C. Ten Eyck. On the same day, the mayor of Greendale, James H. Foley, Jr., advised the Greens' real estate agent of the decision of the building commissioner and of the Greens' right to appeal his decision to the Board of Adjustment of Greendale under Ordinance No. 205. Ordinance No. 205 provides for the establishment of a five-member Board of Adjustment; all of the members are appointed by the mayor. Appeals of any decision of the building commissioner may be taken to the Board of Adjustment if they are filed within thirty days of the challenged decision and upon payment of a $35.00 fee. The Board is to fix a reasonable time for hearing the appeal and to give at least fifteen days public notice as well as notice to the parties.
 
 
 4
 The Greens made no attempt to appeal the building commissioner's decision to the Board of Adjustment. Instead on May 14, 1976, five days after the permit was denied, Gloria Green filed a housing discrimination complaint with the Department of Housing and Urban Development (HUD). In a letter dated October 28, 1976, HUD informed the Greens that they were terminating their efforts at informal resolution of the complaint and that the Greens could bring suit under § 810 of the federal Fair Housing Act, 42 U.S.C. § 3610, if they did so within thirty days. Gloria Green received the notice on either October 31 or November 1, 1976. This action was filed on November 30, 1976. The plaintiffs alleged that stricter standards were applied to their application for an occupancy permit than to applications by white persons.
 
 
 5
 The trial court dismissed the plaintiffs' action but denied the defendants' motion for attorney's fees as the prevailing party. It dismissed the claim against Greendale under § 1983 since it is clear that a municipality is not a "person" subject to suit within the meaning of § 1983.[3] City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Owen v. City of Independence, Missouri, 560 F.2d 925 (8th Cir. 1977), petition for cert. filed, 46 U.S.L.W. 3438 (U.S. December 27, 1977) (No. 77-914). It dismissed the claim under the federal Fair Housing Act, 42 U.S.C. § 3610, as untimely because it was not filed within thirty days of the filing of the complaint with HUD. It also dismissed the remaining claims under §§ 1981, 1982 and 1983 as untimely for failure to comply with Mo.Ann.Stat. § 213.127, the 180-day Missouri statute of limitations for claims of housing discrimination.
 
 
 6
 I. Claims Under 42 U.S.C. §§ 1981 and 1982.
 
 
 7
 Since neither § 1981 nor § 1982 contains a specified period of limitation, it is well-settled that the federal courts are to apply the most appropriate one provided by state law. Johnson v. Railway Express Agency,421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Chambers v. Omaha Public School Dist., 536 F.2d 222, 225 (8th Cir. 1976). This presents little difficulty when there is a state statute of limitations which is directly analogous to the federal claim in question. Clark v. Mann, 562 F.2d 1104, 1111 (8th Cir. 1977); Chambers v. Omaha Public School Dist.,supra at 228.
 
 
 8
 Relying upon this Court's decision in Warren v. Norman Realty Co.,513 F.2d 730 (8th Cir.), cert. denied, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975), the trial court held that the most analogous state statute of limitations was the 180-day limitation period contained in the Missouri Discriminatory Housing Practices law. Mo.Ann.Stat. § 213.127.[4] In Norman Realty, we applied the 180-day limitation period contained in the Nebraska housing discrimination law to an action brought under 42 U.S.C. §§ 1981 and 1982 in which the plaintiffs alleged they had been racially discriminated against in the leasing of a home. We noted that the Nebraska housing discrimination law proscribed the precise conduct involved in the federal civil rights action. We agree with the trial court that Norman Realty is controlling here and that the 180-day limitation period contained in Mo.Ann.Stat. § 213.127 should apply to the claims under §§ 1981 and 1982.
 
 
 9
 Both the Missouri and the Nebraska housing discrimination laws are similar and were patterned after the federal Fair Housing Act. We recognize that the Nebraska housing discrimination law has been deemed to be substantially equivalent to the federal Fair Housing Act, while the Missouri Discriminatory Practices law has not. 24 C.F.R. § 115.12. However, this does not necessarily mean that the Missouri law does not contain the most appropriate statute of limitations for federal claims relating to housing discrimination. It only means that the Missouri law is not viewed to be sufficiently adequate to require that HUD complaints be first referred to the Missouri state housing agency.
 
 
 10
 The question of the applicability of the Missouri Discriminatory Housing Practices law to municipal corporations has not yet been considered by Missouri courts. The plaintiffs contend that the Missouri Discriminatory Housing Practices law "probably does not include a municipal corporation under its provisions of coverage." We cannot agree. While the definition of "person" in Mo.Ann.Stat. § 213.100(5) does not specifically include municipal corporations, it is almost identical to, and was patterned after, the definition of "person" in the federal Fair Housing Act, 42 U.S.C. § 3602(d). This Court has held that a municipality can be sued under the federal Fair Housing Act. United States v. City of Black Jack, Missouri, 508 F.2d 1179, 1183-1184 (8th Cir. 1974), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). See also Mayers v. Ridley, 151 U.S.App.D.C. 45, 50, 465 F.2d 630, 635 (1972) (en banc). We note, moreover, that Mo.Ann.Stat. § 1.020 provides that in construing Missouri statutes, the word "person" includes "bodies politic" unless "otherwise specifically provided or unless plainly repugnant to the intent of the legislature." Since the Missouri Discriminatory Housing Practices law does not specifically exclude application to municipalities and since its application to municipalities would not be "plainly repugnant" to legislative intent, we find that the law does apply to municipalities. It is, thus, clear that the plaintiffs' complaint states a cause of action under the Missouri Discriminatory Housing Practices law and had the plaintiffs brought an action in state court raising claims similar to those raised here under §§ 1981 and 1982, then the 180-day limitation of Mo.Ann.Stat. § 213.127 would have applied. Accordingly, the trial court did not err in dismissing the claims under §§ 1981 and 1982 for failure to comply with the 180-day limitation period.
 
 
 11
 II. Claim Under 42 U.S.C. § 1983.
 
 
 12
 The trial court also held that the 180-day limitation period of the Missouri Discriminatory Housing Practices law, Mo.Ann.Stat. § 213.127, was the most analogous state statute of limitations for the plaintiffs' claim against the individual defendants under § 1983. We cannot agree since an action under § 1983 involves different elements than actions under §§ 1981 and 1982.
 
 
 13
 This Court has noted that "(u)nder appropriate circumstances, a court may be obligated to segregate plaintiff's various civil rights claims and apply separate statutes of limitations to each." Chambers v. Omaha Public School Dist., supra at 227. See also Williams v. Walsh, 558 F.2d 667, 670 (2d Cir. 1977). In Chambers, the plaintiffs' First Amendment claim was viewed as having independent significance and arising from a series of events unrelated to his charge of racial discrimination. Id. at 227 n. 4. This can be contrasted with this Court's decision in Norman Realty that the plaintiffs' breach of contract claim was incidental to their housing discrimination claim and arose out of the same breach of a lease agreement on racial grounds. Warren v. Norman Realty Co., supra at 734-735 n. 3. In this case, an essential element of the plaintiffs' claim under § 1983 is their allegation of state action, an element not necessary for claims under §§ 1981 and 1982. We cannot view the claim of involvement of public officials as presenting a claim merely incidental to their claim of housing discrimination.
 
 
 14
 We note, moreover, that the choice of which state statute of limitations should apply ultimately rests upon a determination of which statute will best effectuate the congressional policies underlying the federal claims. Shaw v. McCorkle, 537 F.2d 1289, 1291 (5th Cir. 1976); Chambers v. Omaha Public School Dist., supra at 225; Peterson v. Fink, 515 F.2d 815, 816 (8th Cir. 1975). Here, the thrust of the plaintiffs' claim under § 1983 is that the mayor and building commissioner of Greendale discharged their duties in an unlawful and discriminatory manner. Missouri does have a statute of limitations which explicitly pertains to actions against a public official "upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty (.)" Mo.Ann.Stat. § 516.130(1). The statute provides for a three-year limitation period.
 
 
 15
 In Peterson v. Fink, supra, this Court held that the three-year Missouri statute of limitations was applicable to an action against federal officers under 42 U.S.C. § 1985. We noted that:
 
 
 16
 (w)e are satisfied that the Federal policy underpinning the claims before us is best effectuated, upon the facts and pleadings before us, by the Missouri limitation provision cited (Mo.Ann.Stat. § 516.130(1)), and that had this action, or a suit similar thereto, been brought in the state court, the state statute pertaining to the unlawful conduct of officers would have governed the action.
 
 
 17
 Id. at 817.
 
 
 18
 We are also satisfied in the instant case that the congressional policies underlying the federal claims are best effectuated by the application of the three-year limitation period; and that if the plaintiffs had brought an action in state court raising claims similar to those raised here under § 1983, the state court would have applied the three-year limitation period of Mo.Ann.Stat. § 516.130(1). Accordingly, the trial court erred in not applying the three-year limitation period to the plaintiffs' claim.
 
 
 19
 The defendants contend that even if the plaintiffs' action under § 1983 was timely filed, it should be barred for failure to exhaust state administrative remedies. The Supreme Court has, however, quite clearly stated that "(w)hen federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) as they are here we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." Steffel v. Thompson, 415 U.S. 452, 472-473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974). The decision in Monroe v. Pape, supra, clearly established the principle of non-exhaustion in § 1983 actions with respect to state judicial remedies. The Supreme Court subsequently extended the principle of non-exhaustion to § 1983 actions where the only available state remedy was an administrative one. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). See generally Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1264-1274 (1977) (hereinafter cited as Developments ); Comment, Exhaustion of State Administrative Remedies in Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974) (hereinafter cited as Comment ).
 
 
 20
 The principle of non-exhaustion has not been without critics, especially with respect to its application to state administrative remedies. See, e. g., Hawkins v. Town of Shaw, Mississippi, 461 F.2d 1171, 1177 (5th Cir. 1972) (Brown, J., dissenting); Eisen v. Eastman, 421 F.2d 560, 567-569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); K. Davis, Administrative Law Treatise § 20.01 at 646 (1970 Supp.), § 20.01-1 at 452-455 (1976 Supp.); Developments, supra; Comment, supra. The critics have noted that each of the major Supreme Court cases on exhaustion of state administrative remedies have involved situations where exhaustion would not have been required under the traditional exhaustion rule. Developments, supra at 1264 n. 1; Comment, supra at 544-547. The Second Circuit has consistently interpreted the Supreme Court's decisions "as simply condemning a wooden application of the exhaustion doctrine in cases under the Civil Rights Act." Eisen v. Eastman, supra at 569.[5] The Eighth Circuit, however, has continued to follow the principle of non-exhaustion of state administrative remedies announced by the Supreme Court. See, e. g., Gilliam v. City of Omaha, 459 F.2d 63 (8th Cir. 1972); Like v. Carter, 448 F.2d 798 (8th Cir. 1971), cert. denied, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972).
 
 
 21
 While we recognize there may be benefits to be derived from requiring exhaustion of state administrative remedies in some situations, see K. Davis, Administrative Law Treatise § 382 (3d ed. 1973); Developments, supra at 1265-1266, we cannot agree that this is such a case and, thus, we need not reexamine this Circuit's position. The right of appeal to the Greendale Board of Adjustment is not an adequate one for purposes of the administrative exhaustion rule. Ordinance No. 205 only requires that a hearing on the appeal be held within a "reasonable time." This provides no guarantee that the appeal will be heard within a sufficient amount of time so that the Greens can enjoy the benefit of their bargain. An individual cannot reasonably be expected to enter into a purchase agreement for a home on the strength of the possibility that the Board might reverse the decision of the building commissioner and grant an occupancy permit. In addition, the plaintiffs have sought damages for the denial of the occupancy permit which the Board is not empowered to grant. We note, moreover, that the issues raised in this case, the right to housing without regard to race and the right of an extended family to live together,[6] are constitutional ones which lie within the expertise of the courts rather than the expertise of the Greendale Board of Adjustment. See Plano v. Baker, 504 F.2d 595, 599 (2d Cir. 1974). Accordingly, the plaintiffs' action under § 1983 is not barred for failure to exhaust administrative remedies.
 
 
 22
 Since the plaintiffs' claim under § 1983 was filed within the three-year limitation period, we remand this action to the trial court for further proceedings with respect to their § 1983 claim.[7]
 
 
 23
 III. Claim Under 42 U.S.C. § 3610.
 
 
 24
 The federal Fair Housing Act, 42 U.S.C. § 3601 et seq., establishes procedures for both the filing of administrative claims and court actions. It is not disputed that Glorida Green, by filing a complaint with HUD five days after the occupancy permit was denied, filed her administrative complaint well within the 180-day filing period established by 42 U.S.C. § 3610(b). The difficult question presented on this appeal is whether the plaintiffs brought this action within the time limits established for filing a civil action.
 
 Section 3610(d) provides that:
 
 25
 (i)f within thirty days after a complaint is filed with the Secretary * * * the Secretary has been unable to obtain voluntary compliance with this subchapter, the person aggrieved may, within thirty days thereafter, commence a civil action in any appropriate United States District Court * * *.
 
 
 26
 The trial court held that under § 3610(d), the plaintiffs must file their action within sixty days of filing the complaint with HUD and, thus, dismissed the action as untimely since it was brought over six months after the HUD complaint was filed. Four other district court decisions have so interpreted § 3610(d). Tatum v. Myrick, 425 F.Supp. 809 (M.D.Fla.1977); Sumlin v. Brown, 420 F.Supp. 78 (N.D.Fla.1976); Brown v. Blake & Bane, Inc., 402 F.Supp. 621 (E.D.Va.1975); Young v. AAA Realty Co. of Greensboro, Inc., 350 F.Supp. 1382 (M.D.N.C.1972). However, a contrary interpretation is contained in the regulations promulgated by HUD and in the decisions of the two other district courts which have reached the question.[8] 24 C.F.R. §§ 105.16(a) and 105.34; Logan v. Richard E. Carmack & Associates, 368 F.Supp. 121 (E.D.Tenn.1973); Brown v. Ballas, 331 F.Supp. 1033 (N.D.Tex.1971).
 
 
 27
 The regulations promulgated by HUD establish a scheme for the filing of administrative claims and the initiation of court actions similar to that established under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Under the regulations, the thirty-day period in which to file a civil action in federal district court does not begin to run until the plaintiff has received notice of the inability of the Secretary to obtain voluntary compliance. 24 C.F.R. §§ 105.16(a) and 105.34.
 
 
 28
 Ordinarily administrative regulations are entitled to deference "(b)ut the sound principle of according deference to administrative practice normally applies only where the relevant statutory language is unclear or susceptible of differing interpretations." Shea v. Vialpando, 416 U.S. 251, 262 n. 11, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120 (1974). See Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). In this case, the HUD regulations are contradicted by the plain language of § 3610(d). Young v. AAA Realty Co. of Greensboro, Inc., supra at 1385. Moreover, other sections of the federal Fair Housing Act clearly indicate that Congress contemplated private civil actions and administrative claims to be contemporaneous. Id. at 1386; Tatum v. Myrick, supra at 811; Brown v. Blake & Bane, Inc., supra at 622. Section 3610(f) provides that if a private action comes to trial, then the Secretary shall cease efforts at obtaining voluntary compliance.[9] The reverse situation is covered in § 3612(a) which provides that a court shall continue a private action if it is convinced that conciliation will result in settlement.[10]
 
 
 29
 This interpretation is also supported by the legislative history of the Act. The federal Fair Housing Act was finally enacted as Title VIII of the Civil Rights Act of 1968. In 1966, the House of Representatives had passed a fair housing bill, H.R. 14765, Title IV of the Civil Rights bill of 1966, which had been endorsed by President Lyndon B. Johnson. The enforcement provisions in the fair housing bill passed by the House in 1966 differed in some significant respects from those in the Fair Housing Act as it was finally enacted. The following comparison of the two fair housing provisions was prepared by the staff of the House Judiciary Committee and was read into the record by Representative Gerald R. Ford.
 
 
 30
 The House version established strict enforcement procedures. It established a Fair Housing Board as a new government agency with broad powers, similar to that of the National Labor Relations Board. Thus, the complainant would seek the vindication of his fair-housing rights before the Board, rather than going to court, as he would under the Senate version. * * *
 
 
 31
 Under the Senate version, the Secretary of HUD is authorized to educate, persuade and conciliate in order to eliminate discriminatory housing practices. But, if the Secretary of HUD is unsuccessful, the sole recourse under the Senate version is to the court, State or federal, and not any administrative agency, such as a Fair Housing Board.
 
 
 32
 114 Cong.Rec. 9611 (1968).
 
 
 33
 It is clear that Congress contemplated a very limited role for HUD. Representative Emmanuel Cellar, the Chairman of the House Judiciary Committee, described the provisions for administrative enforcement and private civil actions as follows:
 
 
 34
 The Department of Housing and Urban Development would have conciliation authority to resolve complaints alleging discriminatory housing practices. A person aggrieved files his complaint within 180 days after the alleged acts of discrimination. The Secretary of Housing and Urban Development would have 30 days after filing of the complaint to investigate the matter and give notice to the person aggrieved whether he intended to resolve it. * * * If conciliation failed, or if the Secretary declined to resolve the charge or otherwise did not act within the 30-day period, the aggrieved person would have 30 days in which to file a civil action in either a State or Federal court.
 
 
 35
 In addition to administrative remedies, the bill authorizes immediate civil suits by private persons within 180 days after the alleged discriminatory housing practice occurred in any appropriate U.S. district court or appropriate state or local court of general jurisdiction.
 
 
 36
 114 Cong.Rec. 9560 (1968) (remarks of Rep. Cellar). See also 114 Cong.Rec. 9612 (1968) (remarks of Rep. Ford).
 
 
 37
 It is, thus, evident that Congress intended civil actions and administrative claims to be contemporaneous.
 
 
 38
 We must also reject the analogy to Title VII. See Tatum v. Myrick,supra at 811-812; Sumlin v. Brown, supra at 81; Brown v. Blake & Bane, Inc., supra at 623; Young v. AAA Realty Co. of Greensboro, Inc., supra at 1386-1387. The Fair Housing Act does not contain a provision similar to42 U.S.C. § 2000e-5(e) which requires that an individual receive a right-to-sue notice from the Equal Employment Opportunity Commission before he can commence a civil action in federal court. The notice under Title VII is a notice indicating that the EEOC has terminated its efforts at voluntary compliance. The only notice requirement contained in the Fair Housing Act is that of § 3610(a) which requires HUD to give notice if the Secretary intends to resolve the complaint. Such a notice is quite different than that required as a prerequisite for suit under Title VII.
 
 
 39
 Thus, we have no alternative but to hold that the trial court correctly interpreted § 3610(d) to require that an individual must file a civil action within sixty days of filing a complaint with HUD and did not err in dismissing the plaintiffs' claim under § 3610. We do so reluctantly because the individual who, like the Greens, relies in good faith upon the HUD regulations may be precluded from bringing an action under the federal Fair Housing Act and has no recourse against HUD for damages caused by reliance upon HUD's invalid regulations. See 28 U.S.C. § 2680(a); 3 K. Davis, Administrative Law Treatise § 25.12 at 487-488 (1958). As the court in Tatum v. Myrick, supra, noted:
 
 
 40
 Although the Act contains an unfortunate, intrinsic infirmity that permits a good faith grievant-plaintiff to wait for the outcome of HUD's efforts until after the jurisdictional time-period for commencing suit has passed, that defect does not supply the authority for the Court to rewrite the clear statutory scheme and invent exceptions to it.
 
 
 41
 Id. at 812.
 
 
 42
 We hope that in the near future, HUD will promulgate new regulations or Congress will enact a new statute.
 
 
 43
 IV. Attorney's Fees.
 
 
 44
 Two questions with respect to attorney's fees are raised on this appeal. The plaintiffs seek an award of attorney's fees for the work performed on appeal should they prevail. The defendants contend that the trial court erred in denying their motion for attorney's fees as the prevailing party under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. They raise the issue of whether the standard for awarding attorney's fees under the Act should be the same for both prevailing plaintiffs and prevailing defendants.
 
 Section 1988 provides that:
 
 45
 (i)n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 46
 The legislative history of § 1988 makes it clear that a plaintiff successful in asserting rights under the statutes covered by § 1988 should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. S.Rep.No.94-1011, 94th Cong., 2d Sess. 4, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 5908, 5912, quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). See Wharton v. Knefel, 562 F.2d 550 (8th Cir. 1977). We feel that this is an appropriate case for an award of attorney's fees on appeal as the plaintiffs prevailed on appeal with respect to the maintenance of an action under § 1983. Accordingly, we award plaintiffs' attorney's fees for the appellate portion of this litigation in the sum of $1,000.
 
 
 47
 Since we have reversed the decision of the trial court in part and remanded this action for further proceedings, we need not reach the question raised by the defendants of the standard to be used in awards of attorney's fees to prevailing defendants under 42 U.S.C. § 1988. On remand, the trial court shall consider the question of attorney's fees for future proceedings at the trial court level.[11]
 
 
 48
 Reversed in part and remanded for further proceedings not inconsistent with this opinion.
 
 
 49
 Costs on appeal shall be assessed against appellees-appellants, the City of Greendale, William C. Ten Eyck and James H. Foley, Jr.
 
 
 
 *
 ELMO B. HUNTER, United States District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 The plaintiffs originally brought their action under both 42 U.S.C. §§ 3610 and 3612. Subsequently, the plaintiffs withdrew their reliance on § 3612
 
 
 [2]
 While the complaint is not phrased in separate counts, it can be construed to state several separate causes of action under each of the various provisions which guarantee the right to equal treatment with respect to housing. Cf. Williams v. Walsh, 558 F.2d 667, 670 (2d Cir. 1977); Chambers v. Omaha Public School Dist., 536 F.2d 222, 227 (8th Cir. 1976)
 
 
 [3]
 The plaintiffs do not challenge this ruling on appeal
 
 
 [4]
 Mo.Ann.Stat. § 213.127(1) provides, in relevant part, as follows:
 The rights * * * (to housing without discrimination) may be enforced by civil actions in any magistrate or circuit courts in this state and shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred.
 We note that Mo.Ann.Stat. § 213.127 specifically refers to the filing of a judicial action and not merely to the filing of an administrative claim. This Court has refused to apply a limitation period for the filing of an administrative claim as the most analogous state statute of limitations for the filing of a judicial action. Chambers v. Omaha Public School Dist., supra at 226-227. See also Waters v. Wisconsin Steel Works, 427 F.2d 476, 488 (7th Cir.), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Smith v. Perkin-Elmer Corporation, 373 F.Supp. 930, 936 (D.Conn.1973).
 
 
 [5]
 See, e. g., Fuentes v. Roher, 519 F.2d 379, 386-387 (2d Cir. 1975); Plano v. Baker, 504 F.2d 595, 597 (2d Cir. 1974); Blanton v. State University of New York, 489 F.2d 377, 383-384 (2d Cir. 1973); Goetz v. Ansell, 477 F.2d 636, 637 (2d Cir. 1973)
 
 
 [6]
 In Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), the Supreme Court struck down an ordinance which limited the occupancy of a dwelling unit to a single "family" and contained a very restrictive definition of "family." The Supreme Court stated:
 Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural.
 Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition.
 Id. 431 U.S. at 503-504, 97 S.Ct. at 1938, 52 L.Ed.2d at 540-541 (footnotes omitted).
 
 
 [7]
 We do not reach the question of the appropriate statute of limitations for claims brought directly under the Constitutions of the United States and the State of Missouri as we find that the plaintiffs timely filed an action under 42 U.S.C. § 1983
 
 
 [8]
 We note that the action may still have been untimely filed even if we accept the position of HUD as expressed in the regulations. The letter from HUD stating that it has been unable to obtain voluntary compliance and that suit could be brought within thirty days was dated October 28, 1976. Gloria Green stated that she received the notice on either October 31 or November 1. The regulations provide that the thirty-day period is to run from the date notice is received. 24 C.F.R. §§ 105.16(a) and 105.34. If notice was received on October 31, then this action, which was filed on November 30, would be untimely
 
 
 [9]
 Section 3610(f) provides:
 Whenever an action filed by an individual, in either Federal or State court, pursuant to this section or section 3612 of this title, shall come to trial the Secretary shall immediately terminate all efforts to obtain voluntary compliance.
 42 U.S.C. § 3610(f).
 
 
 [10]
 Section 3612(a) provides in relevant part:
 (T)he court shall continue such civil case brought pursuant to this section or section 3610(d) of this title from time to time before bringing it to trial if the court believes that the conciliation efforts of the Secretary * * * are likely to result in satisfactory settlement(.)
 42 U.S.C. § 3612(a).
 
 
 [11]
 We note that the Supreme Court has recently considered the question of the criteria that should govern the award of attorney's fees to a prevailing Title VII defendant. Christiansburg Garment Co. v. Equal Employment Opportunity Commission, --- U.S. ----, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). It explicitly approved of the criteria set forth by the Second and the Third Circuits in Carrion v. Yeshiva University, 535 F.2d 722 (2d Cir. 1976), and United States Steel Corporation v. United States, 519 F.2d 359 (3d Cir. 1975), and stated "(i)n sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." Id. at 4107, 98 S.Ct. at 700. The legislative history makes it clear that a similar standard should be applied to awards of attorney's fees under Title VII as to awards of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988