**Colie B. CHAPPELLE**

v.

**George CHASE, Sgt. John Doe, Joseph O'Neill, Frank L. Rizzo, Ralph Dennis, Joseph R. Glancey, and The City of Philadelphia.**

Civ. A. No. 79–1325.

United States District Court, E. D. Pennsylvania.

Feb. 4, 1980.

Colie B. Chappelle, pro se.

Jonathan Vipond, III, Philadelphia, Pa., for Glancey and Dennis.

Paul R. Sacks, Philadelphia, Pa., for Chase, O'Neill, Rizzo and City of Philadelphia.

## MEMORANDUM

POLLAK, District Judge.

On April 11, 1979, plaintiff Colie B. Chappelle, Esq., a lawyer practicing in Philadelphia, commenced this action against Philadelphia Municipal Court Judge Ralph Dennis; President ·Judge of the Municipal Court Joseph R. Glancey; Officer George Chase and Sergeant "John Doe" of the Philadelphia police force; former Police Commissioner Joseph O'Neill; former Mayor Frank L. Rizzo; and the City of Philadelphia. The complaint asserts (1) federal claims said to arise under the Fourteenth Amendment and under 42 U.S.C. § 1983 and other federal civil rights statutes, and (2) state law claims asserted to be pendent to the federal claims.

Judge Dennis has moved to dismiss on the grounds (1) that this Court lacks jurisdiction over him because he is protected by judicial immunity, and (2) that the complaint fails to state a claim against him upon which relief can be granted. Judge Glancey has moved to dismiss on the immunity grounds and on the additional grounds that (1) *respondeat superior* does not reach mere negligence in civil rights cases, and (2), even if it did, he cannot be vicariously liable if Judge Dennis is not primarily liable. Defendants Chase, O'Neill, Rizzo and the City have moved to dismiss (1) for lack of jurisdiction and failure to state viable causes of action, and (2) because the claims are time-barred.

The time-bar defenses, though more modest in implication than the jurisdictional defenses, are broader in scope, since, if meritorious, they bar most of the claims made against all of the defendants. I will, therefore, begin by assuming, *arguendo*, that the challenges to jurisdiction and the asserted causes of action are unfounded,[1] and will address the various statute of limitations questions. To put the questions in context, it is necessary to summarize the factual allegations of the complaint.

### I.

The complaint alleges the following events: At a hearing on April 12, 1977, Judge Dennis excoriated plaintiff for professional incompetence, threatened him with a citation for contempt of court, and yelled at him to "get out of here." Officer Chase then refused to permit plaintiff to

---

1. Cf. *Comment*: *Assuming Jurisdiction Arguendo, The Rationale and Limits of Hypothetical Jurisdiction*, 127 U. of Pa.L.Rev. 712 (1979).

see his client, physically removing plaintiff from the cell-block area and forcibly escorting him out of the building. There, Officer Chase "pushed plaintiff and twice dry spitted in his face" and another officer "called plaintiff a faggot." Thereafter, prompted by Sergeant "Doe," Officer Chase arrested plaintiff and brought him back into the building where plaintiff was searched—a search "observed from a distance of a few feet" by Judge Dennis—and confined to a cell. An hour later, plaintiff, in handcuffs, was transported, by police wagon, to the 35th Police District where he was placed in a detention room and handcuffed to a bench. A few hours later, plaintiff was "mugged [and] fingerprinted" and then released on his own recognizance to stand trial on June 3, 1977, pursuant to a criminal complaint lodged by Officer Chase, charging simple assault, trespass, and disorderly conduct. On June 3, 1977, the charges were withdrawn at the request of the District Attorney.

On the basis of these alleged events, Mr. Chappelle has charged all the defendants with violating his federal constitutional and statutory rights, and also various state common law rights. Specifically, he has accused them of depriving him of his rights (1) to be free of illegal seizure of his person, (2) to be free of cruel and unusual punishment, (3) to due process and equal protection, and (4) to "freely, fully, and truthfully" participate in judicial proceedings; he has also accused them of assault and battery, defamation, false arrest and false imprisonment. Finally, he has charged them (although this would appear to apply only to the defendant City and its former Mayor and Police Commissioner) with negligent failure properly to "discipline, restrict and control employees known to be dangerous" and with failing to take "adequate precautions in the hiring and retention of police officers and judges."

Since there are no specifically stated federal statutes of limitations governing actions under 42 U.S.C. § 1983, 42 U.S.C. § 1988 instructs that the controlling provision is the most appropriate limitations period provided by state law, "so far as the same is not inconsistent with the Constitution and laws of the United States."[2] See *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

Defendants contend that under Pennsylvania law plaintiff's claims sounding in conspiracy and defamation are subject to a one-year statute of limitations. Plaintiff alleges that Judge Dennis and Officer Chase and another person named "Morris" (not named as a defendant or otherwise identified in the complaint) each "conspired with others to defame" plaintiff. Complaint ¶¶ 28–30. Assuming that a conspiracy to defame can give rise to a cause of action under § 1983, (but see *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)), these claims are nonetheless time-barred. Although the Court of Common Pleas did hold, in *Smith v. Morris*, 40 D.&C. 237 (Pa.C.P.1941), that such an alleged conspiracy was subject to a six-year statute of limitations, I am persuaded that the proper Pennsylvania rule, reflected in more recent decisions, instructs the court to be guided by the statute of limitations for the substantive offense alleged to have been the object of the conspiracy. *Brownley v. Gettysburg College*, 68 D.&C.2d 288, 297–302

---

**2.** Section 1988 provides, in relevant part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cases is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

(Pa.C.P.1973), *aff'd* 229 Pa.Super. 739, 322 A.2d 368; *Auld v. Mobay Chemical Co.*, 300 F.Supp. 138 (W.D.Pa.1969). The relevant statutes are 12 P.S. §§ 31 and 32 which specify a one-year statute of limitations for "trespass on the case for words." These claims will be dismissed.

Next, defendants argue that plaintiff's claims sounding in false arrest and malicious prosecution are governed by the one-year limitations period heretofore prescribed by former 12 P.S. § 51. Here, the false-arrest claim accrued on April 11, 1977; and the malicious prosecution claim accrued on June 3, 1977, when the criminal charges against plaintiff were withdrawn. See *Sicola v. First National Bank*, 404 Pa. 18, 170 A.2d 584 (1961). Since the complaint was not filed until April 11, 1979, these claims are time-barred if Section 51 controls. Furthermore, defendants assert that plaintiff's claims sounding in false imprisonment and in assault and battery and his claim charging an unlawful search of his person must be subsumed under Section 51's one-year false-arrest/malicious-prosecution limitation because the conduct giving rise to those claims was "inextricably intertwined" with Mr. Chappelle's arrest. See *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109 (1971). ■ Mr. Chappelle does not dispute that—the defamation claim apart—the claims are all "inextricably intertwined," and that if Section 51 governs as to false arrest and malicious prosecution, it bars the other claims as well. Rather, plaintiff points to 42 Pa.C.S.A. § 5524, Pennsylvania's newly enacted limitations provision, which allows two years for actions for false arrest, malicious prosecution, assault and battery, and false imprisonment.[3] This provision took effect June 27, 1978. Plaintiff concedes that (1) the new act specifically provides that "[n]o cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act," and (2) accordingly, under state law, his claims—which were fully barred as

of April 12 and June 3, 1978—were not revived by the new two-year provision. Nonetheless, plaintiff argues that this court, in determining the timeliness of plaintiff's federal-law claims, should disregard the non-revival provision. It is plaintiff's view that the non-revival provision, by denying him recovery, "contrave[nes] . . . Congressional policy geared to promote prosecution of meritorious civil rights claims," and therefore is, within the meaning of 42 U.S.C. § 1988, "inconsistent with the Constitution and laws of the United States."

The Supreme Court has recently reemphasized that "Federal courts must be ever vigilant to insure that application of state law poses 'no significant threat to any identifiable federal policy or interest.'" *Burks v. Lasker*, 441 U.S. 471, 479, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979) (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). Thus, "specific aberrant or hostile state rules," *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 596, 93 S.Ct. 2389, 2398, 37 L.Ed.2d 187 (1973), will not be applied. And state rules which operate to frustrate federal policy—here the weighty policy of preventing official illegality—will be displaced, lest "the prohibition of [the] federal statute . . . be set at naught." *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942). In the instant case, however, plaintiff does not suggest that the non-revival provision was enacted out of hostility to civil-rights claims or that its application will adversely affect the rule of federal law in preventing abuses of power by those acting under color of state authority. Nor does he contend that the non-revival provision is unreasonable when applied to his state-law claims. Rather, the inconsistency complained of is simply that application of the provision deprives plaintiff of an opportunity to litigate his federal claims at this date. In *Robertson v. Weg-*

---

**3.** The new Act provides, in relevant part:

The following actions and proceedings must be commenced within two years:

(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.

*mann*, 436 U.S. 584, 593, 98 S.Ct. 1991, 1997, 56 L.Ed.2d 554 (1978), Justice Marshall made short shrift of a similar contention:

> That a federal remedy should be available, however, does not mean that a § 1983 plaintiff . . . must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.[4]

Thus, since application of the non-revival provision is not inconsistent with federal law, this court is obliged to give the provision effect in determining the timeliness of plaintiff's claims.

The plaintiff relies further upon language in *Green v. Ten Eyck*, 572 F.2d 1233 (8th Cir. 1978), for the proposition that "the choice of which state statute of limitations should apply ultimately rests upon a determination of which statute will best effectuate the congressional policies underlying the federal claims." *Id.* 1239. *Ten Eyck*, however, involved a choice between two state statutes of limitations, both in force and each one arguably applicable. It did not involve a choice, such as that here, between a statute of limitations and its predecessor, only one of which could have been in force

on any given day: the predecessor was in force in April and June of 1976, when the causes of action accrued, and was still in force two years thereafter, when by its plain terms, the claims turned stale.

■ The fact that the plaintiff has not challenged the application of a single statute of limitations to several quite diverse claims does not, of course, require me to disregard the possibility that separate statutes are appropriate. *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974). I have concluded, however, that the various causes of action which may be said to underlie plaintiff's complaint—with the exception of the alleged conspiracy to defame, separately considered above—are sufficiently intertwined with the false arrest to require the application of only one statute. The Pennsylvania Supreme Court made clear in *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 112 (1971), that a false imprisonment said to have accompanied a false arrest is to be treated as barred by the shorter statute of limitations of the latter claim. The claim of assault and battery accompanying the arrest here is slightly more difficult. In *Polite v. Diehl*, our Court of Appeals held that where an "assault alleged . . . occurred not when the plaintiff was arrested . . . but considerably later while he was being held in the police station," it was not "inextricably intertwined" with the false arrest and the longer statute of limitations for assault and battery should be applied. 507 F.2d at 123. But, unlike *Polite*, the assault and the battery alleged here occurred before the arrest and were not separated from it by a significant time period. And, unlike *Nejman v. Ziegler*, Civil Action No. 79–49 (E.D.Pa., April 30, 1979),

---

4. *Robertson*, itself, posed the question whether a federal district court in Louisiana was required to apply Louisiana's survivorship statute which, if applied, would cause plaintiff's action to abate. For the majority, Justice Marshall concluded that "the mere fact of abatement of a particular lawsuit is not sufficient ground to declare state law 'inconsistent with' federal law." *Id.* at 595, 98 S.Ct. at 1997. In dissent, Justice Blackmun acknowledged that "state law . . . may well be a suitable source . . . . of statute of limitation, since that is a

rule for which the litigants can plan." *Id.* at 603, 98 S.Ct. at 2002.

Of course, there can be aspects of state limitations law which conflict with federal policy. For example, federal courts have consistently held that the period of limitations does not begin to run in a civil-rights action until a plaintiff could reasonably know that his rights had been violated—regardless of state law on the matter. See, e. g., *Pollard v. United States*, 384 F.Supp. 304 (M.D.Ala.1974).

there is no suggestion here that the arrest was designed to mask the antecedent assault and battery. Finally, although the assault and battery here may not have been necessary to accomplish an arrest, they amount to little more than a technical tort committed in the course of making an arrest. They do not rise to the level of excessive severity said to set apart the assaults and batteries in *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 672–73 (E.D.Pa.1978) (Luongo, J.) and *Lopez v. White*, 443 F.Supp. 556, 559 (E.D.Pa.1977) (Higginbotham, J.).

Accordingly, I have concluded that plaintiff's federal claims sounding in false arrest, false imprisonment, assault and battery, and malicious prosecution are time-barred[5] because their state counterparts would be.

Next to be considered is plaintiff's claim sounding in negligence. That claim charges defendants with:

   (a) Failure to exercise due care under the circumstances;

    *     *     *     *     *     *

   (c) Failure to properly discipline, restrict and control employees known to be dangerous to citizens of the community;

   (d) Failure to take adequate precautions in the hiring and retention of police officers and judges.

Complaint ¶ 40. Although this claim is denominated as a "pendent" and, therefore, a state claim, I will consider it as intended also to give factual content to the very general federal claims under Section 1983. *See Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977).

Unlike the claims discussed previously, the claim for negligence would not appear to be time-barred. The general statute of limitations for such negligence actions in Pennsylvania at the time this action arose was at least two years. 12 P.S. § 34. Since the complaint was filed within two years, the negligence claim will survive the test of the statute of limitations. Wherefore, it now becomes necessary to examine certain of the other grounds for dismissal which defendants have advanced.

## II.

Mr. Chappelle's negligence claim against the City of Philadelphia founders upon the shoals of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although the Court in that case did do away with the immunity from suit under Section 1983 formerly accorded municipalities by *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it did so narrowly:

Local governing bodies, therefore can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

    *     *     *     *     *     *

Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

98 S.Ct. at 2035–36.

Since Mr. Chappelle's complaint fails to allege such an official policy or custom, I will dismiss the City as a defendant. But since plaintiff is entitled to an opportunity to amend his complaint, provided that he can, in good faith, assert an appropriate factual basis for such an amendment, *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976), I will allow him thirty days within which to undertake to bring his pleading into conformity with *Monell*, if he elects to do so. See *Jones v. City of Philadelphia*, 481 F.Supp. 1053 (E.D.Pa. 1979).[6]

---

**5.** One additional claim, treated in this opinion as coming within 42 U.S.C. § 1985, is also time-barred under the doctrine of inextricable intertwinement. See *infra* at p. 851.

**6.** There might well be a question whether an amended pleading which alleged a custom or official policy with sufficient specificity to meet

The other negligence claims are aimed at various individual defendants who, in 1976, occupied supervisory positions of an official nature:

■ One claim is directed at Judge Glancey as President Judge and hence—so the claim runs—Judge Dennis' superior. This claim is defeated by Judge Glancey's judicial immunity, since it seeks to put in issue the performance by Judge Glancey of judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

■ The negligence claims directed against former Mayor Rizzo and former Police Commissioner O'Neill present a more difficult problem. Mr. Chappelle contends that his allegation that the defendants failed to control employees "known to be dangerous" can withstand dismissal because it sets forth "an accepted basis for imposing liability on upper echelon police [officers]." *Rende v. Rizzo*, 418 F.Supp. 96, 98 (E.D.Pa. 1976). Of course it may be that—as Judge Luongo put the matter in *Schweiker v. Gordon, supra,* at 1140—

. . . if O'Neill [and Rizzo] knew that these policemen were engaged in a continuous practice of unconstitutional conduct and nevertheless refused to take any action to rectify that situation, [they] could be held personally accountable for [their] intentional failure to prevent civil rights violations by these policemen.·

But the conclusory assertion in this complaint that those in supervisory positions failed to control employees known to be dangerous, without any recital of specific supporting factual allegations, will not suffice to state such a claim. See *Rotolo v. Borough of Charleroi, supra.* Furthermore, as Chief Judge Lord pointed out in *Santiago v. City of Philadelphia*, 435 F.Supp. 136, 151 (E.D.Pa.1977):

the requirements of *Monell* would be subject to the one-year statute of limitations which I have found applicable to the intentional tort claims; but no such question is now before me.

7. The complaint contains references to the First, Fourth and Fifth Amendments as well.

The cases suggest that relief may not be obtained against supervisors unless they have participated in the offending conduct or have knowledge of and acquiesced in the constitutional deprivation. *See, e. g., Hampton v. Holmesburg Prison Officials,* [546 F.2d 1077] at 1082; *Black v. Brown,* 513 F.2d 652, 654 n.3 (5th Cir. 1975); *United States ex rel. Bennett v. Prasse,* 408 F.Supp. 988, 991 (E.D.Pa. 1976); *Fialkowski v. Shapp,* 405 F.Supp. . 946, 950 (E.D.Pa.1975).

Accordingly, the negligence claims against former Mayor Rizzo and former Commissioner O'Neill will be dismissed and plaintiff will be given thirty days within which . to amend, if he chooses.

■ This conclusion leaves plaintiff's general negligence claim that defendants failed "to exercise due care under the circumstances." It is not at all clear that plaintiff intended this as a Section 1983 claim. If it was so intended, it fails for lack of specificity and will be dismissed. Should the plaintiff so choose, he may amend this claim as well within thirty days. It would then be necessary for me to decide whether simple negligence will constitute a cognizable claim under Section 1983. *Compare Jones v. McElroy,* 429 F.Supp. 848, 861–63 (E.D.Pa.1977), *with Santiago v. City of Philadelphia, supra.*

Mr. Chappelle's complaint also presses claims under 42 U.S.C. §§ 1985(2) and (3), 1986 and 1988, as well as under the Fourteenth Amendment.[7]

The claim under 42 U.S.C. § 1986 is, by the express terms of that provision, timebarred since it was not "commenced within one year after the cause of action . . . accrued." 42 U.S.C. § 1986.

■ The claim under 42 U.S.C. § 1988 is, by itself, insufficient to ground federal jurisdiction over this lawsuit. Mr. Justice Marshall characterized Section 1988 in *Moor v. County of Alameda* :

But, since no federal officials are parties defendant, these references must be taken to be additional references to the Fourteenth Amendment.

Properly viewed, then, § 1988 instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts. But we do not believe that the section, without more, was meant to authorize the wholesale importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights.

411 U.S. 693, 704–05, 93 S.Ct. 1785, 1792–1793, 36 L.Ed.2d 596 (1973) (*overruled on other grounds* in *Monell, supra*). It is a corollary that Section 1988 does not, by itself, create any federal cause of action. See also, *Ammlung v. City of Chester*, 355 F.Supp. 1300, 1304 (E.D.Pa.1973), *affirmed* 494 F.2d 811 (3d Cir. 1974).

■■■ The complaint also alleges that the "actions of the defendants deprived the plaintiff of the right to 'freely, fully, and truthfully' participate, as court-appointed counsel, in judicial proceedings." Complaint ¶ 34. It is unclear whether this allegation is intended to make out a claim under Section 1983 or Section 1985(2). But since the complaint makes mention of Section 1985, and since none of the other allegations seems to fall within its language or spirit, I am treating this allegation as made thereunder.[8] Assuming that plaintiff may be regarded as attempting to assert his own federal rights—rather than, as Judges Glancey and Dennis contend, those of his client—this federal cause of action must be measured by Pennsylvania's time limitations, just as with claims under Section 1983. *Henig v. Odorioso*, 385 F.2d 491 (3d Cir. 1967), *cert. denied* 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). The state cause of action closest to that alleged here would appear to be that of wrongful interference with contractual relations, which includes interference with the attorney-client relationship. See *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *cert. denied and appeal dismissed* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *Richette v. Solomon*, 410 Pa. 6, 187 A.2d 910 (1963); Restatement (Second) of Torts § 766; 37 P.L.E. § 7.

Ordinarily, this cause of action would be subject to the six-year statute of limitations set forth in 12 P.S. § 31. But, just as with the claims sounding in assault and battery, false imprisonment and malicious prosecution, I conclude that this action is also "inextricably intertwined" with the false arrest. Although *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109 (1971), focuses specifically on the inextricable intertwinement as it concerns claims of false imprisonment and battery, its implications are broader. As the Pennsylvania Supreme Court stated:

> [O]ne who confines another, while purporting to act by authority of law which does not in fact exist, makes a false arrest and must respond in damages for whatever civil wrongs he commits. The actions to redress these wrongs is [sic] familiarly known as an action for false arrest and is what the legislature must have meant by the use of the term.

285 A.2d at 111. Since the interference with the attorney-client relationship alleged in this complaint was clearly incident to the alleged wrongful confinement of Chappelle, it follows that it should be viewed as inextricably intertwined with that confinement.

---

8. On its face, to be sure, Section 1985(2) appears aimed primarily at the protection of litigants and witnesses, not lawyers:

> (2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

The appropriate statute of limitations for an action designed to redress that asserted wrong is, accordingly, the then applicable period of limitation for false arrest, one year. Consequently, this claim too is time-barred.

 Finally, inasmuch as there are express statutory causes of action provided by 42 U.S.C. §§ 1983, 1985 and 1986 for the wrongs alleged by the plaintiff, it would surely be inappropriate to imply a direct cause of action under the Constitution. *Jones v. City of Philadelphia, supra* at pp. 1055–1056. The unfortunate fact that, in this case, most of the statutory causes of action are barred by the relevant statutes of limitations, cannot change this result. Indeed, there is no reason to suppose that the statute of limitations would be any different for such an implied cause of action, since one would presumably need once again to refer to the most appropriate state statute of limitations. See *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–04, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).